**GLUCK LAW FIRM P.C.**
Jeffrey S. Gluck (SBN 304555)
2125 S. Beverly Drive
Los Angeles, California 90034
Telephone: 310.776.7413

**ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)
Antoinette Waller (SBN 152895)
S. Ryan Patterson (SBN 279474)
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JACK SCHROEDER, an individual; and BRITNI SUMIDA, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>VOLVO GROUP NORTH AMERICA, LLC, a Delaware limited liability company; and VOLVO CAR USA LLC, a Delaware limited liability company.<br><br>Defendants. | Case No. 2:20−cv−05127 VAP (PVCx)<br>Hon. Virginia A. Phillips<br><br>**SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, UNFAIR COMPETITION, AND MISAPPROPRIATION OF LIKENESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jack Schroeder ("Schroeder") and Britni Sumida ("Sumida," and collectively, with Schroeder, "Plaintiffs") hereby complain against Defendants Volvo Group North America, LLC; and Volvo Car USA LLC (collectively referred to herein as "Volvo," or "Defendants") as follows.

**SUMMARY OF THE CASE**

1. Plaintiff Jack Schroeder is a renowned and sought after automotive and lifestyle photographer.

2. In or about April 2019, Schroeder organized a test-shoot, to take advantage of the "super bloom" of wildflowers in the high desert of Southern California. Schroeder featured a Volvo S60 in the shoot, and enlisted Britni Sumida—a highly sought after model—to capture lifestyle images alongside the car.

3. After shooting for the entire day, Schroeder culled approximately 100 images from more than 1,000 that he captured; which he then painstakingly mastered and refined. As seen below, the final images are stunning.






4. On or about April 23, 2019, Schroeder posted a few of the images on Instagram. In addition to the positive response from his followers, Schroeder received a glowing Instagram comment from Volvo, requesting permission to use the images in its advertising.

5. Schroeder responded via email, explaining that while he was flattered that Volvo liked the images, he does not license his work for free. In an effort to build a relationship with Volvo, and to entice them to purchase his work, Schroeder provided a link to his personal website, which included additional images from the shoot that had not been posted to Instagram.

6. Volvo never responded to Schroeder's email, and he assumed that the car company had simply lost interest in using his images. Six months later, however, Volvo began running a global advertising campaign (the "Campaign") that inexplicably consisted solely of the nine photographs that Schroeder had posted to his Instagram account, as well as two photographs that he posted to his personal website (the "Photos"), including images featuring Ms. Sumida. The Campaign encouraged viewers to learn more about Volvo's products (in this case, the Volvo S60 sedan), and directed viewers to a dedicated Volvo web page where they could purchase a S60. The page was created specifically to receive consumers who clicked on Schroeder's photographs.

7. Volvo's unauthorized commercial exploitation of the Photos is particularly damaging because Ms. Sumida had been hired to star in an ad campaign for a different major car company, and her contract contained a provision preventing her from working for other auto manufacturers.

8. Schroeder brings a straightforward copyright infringement claim (17 U.S.C. § 101, *et seq.*) for misappropriation of his Photos. Because Volvo used images featuring Sumida in its advertising materials, she brings claims for unfair competition and false endorsement under the Lanham Act and related state law claims for misappropriation of likeness.

**JURISDICTION AND VENUE**

9. This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Sections 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition

jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition. This Court also has diversity jurisdiction over this action based upon 28 U.S.C. Section 1332 because there is complete diversity between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Defendants are subject to the personal jurisdiction of the Court because the Campaign was distributed in, expressly aimed at, and viewed by, California residents and residents of this District. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(3) for the same reasons.

## THE PARTIES

11. Plaintiff Jack Schroeder is, and at all times relevant was, a citizen of California, residing in Los Angeles, California.

12. Plaintiff Britni Sumida is, and at all times relevant was, a citizen of California, residing in Los Angeles, California.

13. Defendant Volvo Group North America, LLC has been dismissed from this case.

14. Plaintiffs allege, on information and belief, that Defendant Volvo Cars USA, LLC is a Delaware limited liability company that manufactures and sells Volvo cars and trucks throughout the world, and in this District. Volvo Cars USA, LLC maintains a headquarters in Rockleigh, New Jersey.

## GENERAL ALLEGATIONS

15. Schroeder is a professional photographer, specializing in automotive photography. Britni Sumida is a highly sought after professional actor and model, having appeared in notable advertising campaigns for companies like Timex, Hurley, and Chase bank; as well as starring in the music video for the band Angels and Airwaves' song "Kiss & Tell," which currently has over 2.8 million views on YouTube.

16. Schroeder took the Photos in April 2019, in Anza, California. The purpose of the Photos was to hone his skills, keep his portfolio up to date with images of current models of cars—in this case, the 2019 Volvo S60—and to take advantage of the "super-bloom" of wildflowers happening in Southern California at the time. The copyright for the Photos was registered with the United States Copyright Office, effective May 25, 2020 (United States Copyright Registration VA0002204816).

17. Sumida, a close friend of Schroeder's, participated in the test shoot as a favor—and as a fun, creative way to enjoy the super-bloom, with the potential to add some new images to her own portfolio.

18. On or about April 23, 2019 Schroeder posted nine of the Photos to his Instagram account, receiving enthusiastic praise from among his 11,000+ followers, and other Instagram users. Indeed, on or about April 23, 2019, Volvo left the following public comment on Schroeder's Instagram:

> *We love your post and would like to share it! To accept comment with #yesvolvousa you can read T&Cs at http://live.storystream.it/Volvo-car-us/*

Volvo left another public comment a week later, again praising Schroeder's photos and requesting to use them:

> *@jackschroedercreative We think your post is great and would love to share it on our website! To accept mention us in a comment with #YesVolvoUSA. T&C's at http://live.storystream.it/Volvo-car-us/rights*

19. The terms and conditions that Volvo identified in their comments are unreasonable, especially to a professional photographer. Volvo would be free to use the Photos in all media, in perpetuity; and Schroeder would receive no compensation or creative input. Thus, on May 3, 2019, Schroeder emailed Volvo explaining that while he was flattered by their interest in his work, he would not license the Photos under the terms offered. Instead, Schroeder offered to negotiate a license, and sent links to his personal website, which featured additional images Volvo might want to use. Schroeder never received a response to this email, and he assumed that Volvo was interested in the Photos only if they could use them without paying compensation. Unfortunately, he had no idea how right he was.

**A. Volvo uses the Photos in its global advertising campaign.**

20. On or about November 19, 2019, to increase sales, attract new customers, and enhance its brand goodwill, Volvo published an Instagram "story" (a collection of images that is available to view for a limited time) featuring the Photos as the sole creative element. As seen in the images below, Volvo used a special "swipe up" feature that directs the viewer to an external (i.e. outside of Instagram) website where they can purchase a featured product—in this case, the Volvo S60.

   

21. If this unauthorized use were not enough, Volvo also posted the Photos on its verified Pinterest page, which boasts over 10 million monthly viewers—even going so far as to include the Photos as the page's main header:



Unlike Volvo's Instagram "story," the images posted to Volvo's verified Pinterest account do not credit Schroeder as the photographer; and while Volvo has removed its copies of the Photos from Instagram, all eleven of the Photos inexplicably remain available to view on Pinterest to this day.[1] Like its Instagram story, Volvo's Pinterest pages directed its 10 million+ monthly viewers to a dedicated website where they could read about and purchase an S60.

22. The images that Volvo published to its verified Pinterest page included not only those that Schroeder had posted to Instagram, but two others that he had made available only on a promotional web page and the personal website identified in his May 3, 2019 email rejecting Volvo's request to use his Photos for free.

23. On November 20, 2019, Schroeder emailed Volvo explaining that they were using his Photos without his authorization, and that this use had not only damaged him, but also Ms. Sumida. Specifically, Schroeder explained that "because the images posted by @VolvoCarsUSA featured female talent that is currently in an exclusivity contract with a specific automotive brand, her modeling agency is not

---

[1] See, https://www.pinterest.com/pin/757238124832380012/ (last accessed July 23, 2020).

1 happy about the situation," and that "for a brand to post the images as an online
2 social campaign, it puts her career in jeopardy." Out of concern for his friend's
3 career, and in the interest of reaching a quick and amicable solution, Schroeder
4 requested that the images featuring Ms. Sumida be removed.

5     24. Receiving no response, Schroeder emailed Volvo again two days later,
6 repeating his concerns, and requesting that her images be removed from Volvo's
7 social network sites. Volvo responded by thanking Schroeder for notifying them and
8 stating that the Photos "would not be used going forward."

9     25. Unfortunately, Volvo failed to comply with Schroeder's request.
10 Despite having been notified that their unauthorized use of the Photos was causing
11 damage to Plaintiffs—and to Ms. Sumida's career and contractual relationships in
12 particular—Volvo only removed its Instagram story, and left the infringing images
13 on its verified Pinterest page. Plaintiffs were left with little choice but to retain
14 counsel to vindicate their rights against such an intransigent corporate behemoth.

**B. In response to their complaints, Volvo tries to strong-arm Plaintiffs by bullying their associates.**

17     26. On January 27, 2020, Plaintiffs' counsel sent a cease and desist letter to
18 Volvo, demanding that it immediately cease all uses of the Photos, after which
19 Volvo finally removed the Photos from its verified Pinterest page. On March 6,
20 Volvo, through its counsel, responded to Plaintiffs' letter by acknowledging their
21 use of the Photos on Instagram, but feigning ignorance about Volvo's use or display
22 of the Photos "in any other manner."

23     27. Despite this inauspicious start, Plaintiffs continued to communicate
24 with Volvo in cordial manner. Those efforts proved to be in vain when, on May 22,
25 2020, Volvo's counsel sent an aggressive and intimidating letter to Porch House
26 Pictures—a small mom & pop production company that Schroeder has worked
27 with—threatening to sue them for creating a 20 second video using footage taken
28 during Plaintiffs' April 2019 test-shoot. Specifically, Volvo claimed that the posting

of images and video from Schroeder's test-shoot that "prominently display and feature Volvo's S60 mark, Volvo's distinct, trademark-protected logo, and a motor vehicle that bears unique design features immediately identifiable with Volvo's brand and line of automotive products," constitute "clear, continuing violations of Volvo's rights under federal and state law." Quite a far cry from the laudatory comments Volvo had published to Schroeder's Instagram post last year.

28.  Volvo's letter to Porch House was nothing more than a transparent attempt to bully Schroeder and Sumida into dropping their claims. Indeed Volvo's counsel acknowledged that they had learned about Porch House's video "[d]uring the course of investigating Mr. Schroeder's and Ms. Sumida's allegations," and that they were aware that Schroeder has a professional relationship with Porch House.[2] Bizarrely, while their letter made no reference to the Campaign, or their use of Schroeder's Photos, Volvo affirmatively stated that it never engaged Jack Schroeder to advertise or promote Volvo's products—a half-truth at best, considering Schroeder had explicitly denied Volvo permission to use his Photos.

29.  The Photos were incorporated into the Campaign without Plaintiffs' authorization—or even their knowledge. The purpose of the Campaign was to invite and encourage consumers to purchase Volvo products, and to enhance Volvo's image and goodwill.

30.  In this regard, Volvo, undertook to unlawfully copy, and did unlawfully copy, the Photos for the purpose of incorporating them into the Campaign. On information and belief, Volvo chose to include the Photos in the Campaign because of their aesthetic value and to give the false impression that Plaintiffs—and Ms.

---

[2] This statement is misleading. In fact, Volvo had long been aware of Porch House's authorized use of images and video from Plaintiffs' test-shoot. Indeed, on or about May 4, 2019, Volvo left the following laudatory comments on Porch House's Instagram post:

> @porchhousepictures Your content is great! We'd love to share it on our website. To accept mention us in a comment with #YesVolvoUSA. T&C's at http://live.storystream.it/Volvo-car-us/rights

9                                           SECOND AMENDED COMPLAINT

Sumida, in particular—are affiliated with and endorse Volvo.

31. The Campaign featuring the Photos was offered across Volvo's social media platforms, including, but not limited to, its verified Instagram and Pinterest accounts. Reflecting its importance and appeal, the Photos were also chosen as the main header image for Volvo's verified Pinterest homepage, which boasts more than "10 million+ monthly viewers."

32. On information and belief (based on the content of the Campaign), the Campaign was designed to draw in and engage the consumers to whom Volvo hoped to sell products.

33. Further purposes of the Campaign were to (1) promote sales of Volvo's vehicles and more specifically its S60 sedan; and (2) benefit the reputation and recognition of the Volvo brand as a whole. The Campaign was intended to (and on information and belief, did) engage customers, increase traffic to Volvo's dealerships, websites, social media accounts, and increase Volvo's sales revenues.

34. On information and belief (based on the nature of the advertising) the Campaign was seen by millions of consumers worldwide, because it was shared across a network of official Volvo social media channels.

35. After discovering Volvo's unauthorized use of the Photos, Plaintiffs promptly demanded Defendants cease using the infringing images. Defendants feigned ignorance about the scope of their use, and Volvo continued to use the infringing images for months after Plaintiffs requested that they be removed.

36. Due to Defendants' misconduct as alleged herein, Plaintiffs' reputation and career have been irreparably tarnished, diminishing the value of their work and causing decreased revenue in the future. In addition, Volvo continued using the Photos for months despite having been notified that such use threatened Ms. Sumida's career in general, and specific professional contractual relationships.

37. Volvo benefitted from the misappropriation and infringement in numerous ways, including but not limited to the following: (1) they enjoyed the

increased digital impressions and sales increases generated by the Campaign; and (2) the association with Plaintiffs increased the value, image, and positioning of the Volvo brand.

38. Plaintiffs have sustained significant injury and monetary damages due to Defendants' wrongful acts as alleged in this Complaint. Plaintiffs are at present unable to ascertain the full extent of the monetary damages they have suffered by reason of said acts. To determine the full extent of such damages, including such profits of Defendants as may be recoverable, Plaintiffs will require an accounting from each Defendant of all monies generated from their wrongful conduct.

39. Plaintiffs are informed and believe, and thereon allege, that Defendants' alleged conduct was, and continues to be, intentional, deliberate, willful, wanton, committed with the intention of injuring Plaintiffs, and depriving Plaintiffs of their legal rights; was, and is, despicable conduct that subjects Plaintiffs to a cruel and unjust hardship; and was, and continues to be, undertaken with oppression, fraud and malice. Accordingly, Plaintiffs are entitled to an award of punitive or exemplary damages.

40. Defendants' actions have caused, and will continue to cause, damage and irreparable harm to Plaintiffs (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs, unless preliminarily and permanently enjoined and restrained by the Court.

**First Claim for Relief for Copyright Infringement**
**(By Schroeder against Volvo)**

41. Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

42. Schroeder's Photos were created in 2019. The Photos are original works that may be copyrighted under United States law. Schroeder applied to the copyright office and received a certificate of registration for the Photos, dated May

25, 2020 and identified as United States Copyright Registration Number VA0002204816.

43. After Schroeder's creation of the Photos and (on information and belief) with full knowledge of Schroeder's rights, Defendants infringed Schroeder's copyrights by copying, as described above, the Photos and exhibiting such copied images as advertising materials, including in the Campaign.

44. Even after Schroeder protested, Defendants continued to infringe his copyrights by continuing to exhibit unauthorized copies of the Photos in advertising materials, including on Defendants' social media websites.

45. All of Defendants' acts were performed without Schroeder's permission, license or consent.

46. As a result of Defendants' infringement, Schroeder has suffered and will continue to suffer substantial damage to his business in the form of diversion of trade, loss of profits, and a diminishment in the value of his Photos, rights, and reputation; all in amounts that are not yet ascertainable but not less than the jurisdictional minimum of this court. As a result of Defendants' misconduct as alleged herein, Schroeder's reputation and career has been irreparably tarnished, diminishing the value of his works, and decreasing revenue derived from his work.

47. By reason of its infringement of Schroeder's copyrights as alleged herein, Defendants are also liable to him for the actual damages he has incurred as a result of the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

**Second Claim for Relief for Unfair Competition under Section 43(a) of**
**The Lanham Act (15 U.S.C. § 1125(a))**
**(By Sumida, against Volvo)**

48. Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

49. Sumida's likeness has secondary meaning, as that term is understood in trademark law. As described above, Defendants have falsely used Sumida's likeness in the Campaign, creating the false impression that Sumida endorses Volvo. Members of the public have come to recognize Sumida's likeness as belonging to her. This was done to promote and attract customers to Volvo's website and dealerships, and thereby generate revenue for Defendants. Thus, this was done in furtherance of Defendants' commercial benefit. Sumida is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. By virtue of Sumida's use of her image and identity to build her brand, her likeness has acquired a distinctiveness through secondary meaning. Sumida's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive.

50. The goodwill and reputation associated with Sumida's likeness has continuously grown throughout the general public. Sumida's likeness is now known throughout the United States, the State of California, and the world, as a source of origin for her services and endorsements.

51. Defendants' use of Sumida's likeness is designed to create and does create the false and deceptive commercial impression that Volvo and its products are associated with and/or endorsed by Sumida. The use by Defendants of Sumida's likeness is likely to cause confusion, mistake, or deception of purchasers as to Sumida's endorsement of the goods.

52. Customers and potential purchasers are likely to be attracted to Volvo's products advertised in the Campaign, creating an initial interest in the goods upon seeing them and creating a lasting appreciation, believing them to be endorsed by or otherwise associated with Sumida, thereby resulting in consumer confusion. Defendants' conduct will damage Sumida's ability to enjoy, maintain and exploit

her hard-won recognition—and indeed, threatens to disrupt her contractual relationships with her clients.

53. By Defendants' conduct alleged here, Defendants have wrongfully appropriated for itself business and goodwill value that properly belongs to Sumida and that Sumida has invested time, money, and energy in developing.

54. By reason of Defendants' acts of unfair competition as alleged herein, Sumida has suffered and will continue to suffer substantial damage to her business in the form of diversion of trade, loss of profits, and a dilution in the value of her rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

55. By virtue of Defendants' acts hereinabove described, Defendants have committed, and is continuing to commit, unlawful, unfair, and fraudulent business acts in violation of, *inter alia*, 15 U.S.C. § 1125(a).

56. Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) have caused, and will continue to cause, damage and irreparable harm to Sumida (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Sumida, and to the goodwill associated with Sumida's valuable and well-known likeness; and Sumida's business relationships, unless preliminarily and permanently enjoined and restrained by the Court.

57. Sumida has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to engage in the wrongful conduct herein described.

58. In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Sumida's rights. Sumida is therefore entitled to punitive damages.

**Third Claim for Relief for Unfair Competition under**
**California Business and Professions Code §§ 17200,** ***et seq.***

**(By Sumida, against Volvo)**

59. Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

60. Defendants, by means of the conduct described above, have engaged in, and are engaging in, unlawful, unfair, fraudulent and deceptive business practices under California Business and Professions Code §§ 17200 through 17203. These acts and practices undertaken by Defendants violate California Business & Professions Code § 17200 in that they are—as described above—unfair, fraudulent, and/or unlawful. Specifically, without limiting the generality of the foregoing, such acts and practices constitute violations of the Lanham Act, and are and were fraudulent in that: (a) Defendants seek to deceive consumers regarding Defendants' association with Plaintiff, and (b) the general public and trade is likely to be confused regarding the business relationship between Sumida and Defendants. Further, without limiting the generality of the foregoing, the harm to Sumida and to members of the general public far outweighs the utility of Defendants' practices and, consequently, Defendants' practices constitute an unfair business act or practice within the meaning of Business and Professions Code § 17200.

61. Sumida has sustained, and will continue to sustain, serious and irreparable injury to her business and reputation, as a direct and proximate result of Defendants' conduct (as described above). Unless Defendants are enjoined by this Court, there is a substantial possibility that they will continue to engage in such unlawful, unfair, and deceptive business practices, for which Sumida is without an adequate remedy at law. Accordingly, Sumida is entitled to a preliminary injunction and permanent injunction against Defendants and their officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors, and all persons acting in concert with them, prohibiting them from engaging in further unlawful, unfair and/or fraudulent business practices.

62. As a direct result of Defendants' unlawful, unfair, fraudulent, and

deceptive business practices, Defendants have received, and continue to receive, income and profits that they would not have earned but for their unlawful, unfair, and deceptive conduct and Sumida is entitled to disgorgement of such funds wrongfully obtained.

63. By reason of Defendants' acts of unfair competition as alleged herein, Sumida has suffered and will continue to suffer substantial damage to her business in the form of loss of profits, and a dilution in the value of her rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

64. Sumida is also entitled under the provisions of Business and Professions Code §17208 to an injunction prohibiting Defendants, and each of them, from engaging in any act, directly or indirectly, which constitute unlawful, unfair, and deceptive business practices.

65. In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Sumida's rights. Sumida is therefore entitled to punitive damages.

66. Defendants' conduct, if allowed to proceed and continue and/or let stand, will cause irreparable damage to Sumida's valuable business relationships and consumer relations and will require Sumida to undertake efforts to mitigate damage to such relations, all to Sumida's detriment.  Further, such mitigation costs will require substantial time, effort, and expenditures by Sumida, all to Sumida's detriment.

**Fourth Claim for Relief for Unfair Competition under**

**California Common Law**

**(By Sumida, against Volvo)**

67. Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

68. The above-described conduct of Defendants constitutes unfair

competition under the common law of the State of California.

69. As a result of Defendants' actions, Sumida has been damaged in an amount to be proven at trial.

### Fifth Claim for Relief for Violation of California Civil Code § 3344
### (By Sumida against Volvo)

70. Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

71. California Civil Code § 3344(a) provides:

"Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs."

72. Defendants' conduct alleged above, constitutes a violation of Section 3344 of the California Civil Code, because Defendants knowingly used Sumida's likeness for commercial purposes without authorization.

73. Each such use was unequivocally and directly for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services by Volvo, such that prior consent was required.

74. As a direct and proximate result of Defendants' wrongful acts, Sumida has been damaged in an amount that is not yet fully ascertainable, but which exceeds the jurisdictional minimum of this court.

75. Sumida is informed and believes and based thereon alleges that

Defendants in committing the above described actions, acted willfully, maliciously, and oppressively, and with full knowledge of the adverse effects of their actions on Sumida, and with willful and deliberate disregard fro the consequences to Sumida. By reason thereof, Sumida is entitled to recover punitive and exemplary damages from Defendants in an amount to be determined at the time of trial.

76. Sumida also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of her likeness for Defendants' advantage.

### Sixth Claim for Relief for Misappropriation of Likeness under California Common Law
### (By Sumida, against Volvo)

77. Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

78. Defendants' conduct alleged above, constitutes a violation of Sumida's common law rights of publicity and privacy, because Defendants knowingly used Sumida's likeness for their advantage and without authorization.

79. Sumida is informed and believes and based thereon alleges that Defendants in committing the above described actions, acted willfully, maliciously, and oppressively, and with full knowledge of the adverse effects of their actions on Sumida, and with willful and deliberate disregard fro the consequences to Sumida. By reason thereof, Sumida is entitled to recover punitive and exemplary damages from Defendants in an amount to be determined at the time of trial.

80. Sumida also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of her likeness for Defendants' advantage.

### PRAYER

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1. That Plaintiffs are awarded all damages, including future damages, that

Plaintiffs have sustained, or will sustain, due to the acts complained of herein, subject to proof at trial;

2. That Plaintiffs are awarded their costs and expenses in this action;

3. That Ms. Sumida is awarded her attorneys' fees;

4. For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5. That Defendants be ordered to immediately recall and remove all subject advertisements from all remaining locations, physical or digital;

6. That Defendants be ordered to file with this Court and serve upon Plaintiffs' counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

7. For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Defendants as the result of their wrongful conduct;

8. That Ms. Sumida is awarded punitive damages in an amount sufficient to deter Defendants, and each of them, from their wrongful conduct; and

10. For further relief, as the Court may deem appropriate.

DATED: July 24, 2020         GLUCK LAW FIRM P.C.

By:     /s/
    Jeffrey S. Gluck
    Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on their claims on all issues triable by a jury.

DATED: July 24, 2020          GLUCK LAW FIRM P.C.

By:    /s/
Jeffrey S. Gluck
Attorneys for Plaintiffs