1 | Harrison J. Dossick (SBN 128319)
Email:  hdossick@reedsmith.com
2 | Jonathan D. Gershon (SBN 306979)
Email: jgershon@reedsmith.com
3 | Reed Smith LLP
1901 Avenue of the Stars, Suite 700
4 | Los Angeles, CA  90067-6078
Telephone:  +1 310 734 5200
5 | Facsimile:   +1 310 734 5299

6 | Attorneys for Defendant
Volvo Car USA LLC

7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | JACK SCHROEDER, an
Individual; and BRITNI SUMIDA, an
11 | individual;

12 |

Plaintiffs,

13 |

vs.

14 |

VOLVO GROUP NORTH AMERICA,
15 | LLC, a Delaware limited liability
company; and VOLVO CAR USA LLC, a
16 | Delaware limited liability company

17 | Defendants.

No.: 2:20-cv-05127-VAP (PVC)

**DEFENDANT VOLVO CAR USA
LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

**[FED. R. CIV. PROC. 12(B)(6)]**

Date:            September 14, 2020
Time:            2:00 p.m.
Place:           Courtroom 8A_

Compl. Filed:    June 9, 2020
FAC Filed:       June 29, 2020
SAC Filed:       July 28, 2020

Honorable Virginia A. Phillips

[Request for Judicial Notice, Declaration
of Harrison J. Dossick, and [Proposed]
Order filed concurrently]

18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE THAT** on September 14, 2020 at 2:00 p.m., or as

3  soon thereafter as counsel may be heard, before the Honorable Virginia A. Phillips,

4  United States District Judge, in Courtroom 8A of the above-entitled Court, located at

5  350 West 1st Street, Los Angeles, CA 90012, Defendant Volvo Car USA LLC

6  ("Defendant") will and hereby does move to dismiss Plaintiffs Jack Schroeder and

7  Britni Sumida ("Plaintiffs") Second Amended Complaint ("SAC") for failure to state

8  a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal

9  Rules of Civil Procedure.

10  This Motion is based on this Notice of Motion and Memorandum of Points and

11  Authorities and the concurrently filed Request for Judicial Notice, as well as the

12  papers, pleadings, and other documents on file in this action, matters properly subject

13  to judicial notice, and such other and further oral or documentary evidence as may be

14  presented at or before the hearing.

15  This Motion is made following the conference of counsel pursuant to L.R. 7-3

16  which took place on July 21, 2020.

17  DATED:  August 10, 2020

18

19  REED SMITH LLP

20

21  By: */s/ Harrison J. Dossick*
    Harrison J. Dossick

22  Jonathan D. Gershon
    Attorneys for Defendant

23  Volvo Car USA LLC

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 1 –

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. SUMMARY OF RELEVANT FACTS.................................................2

    A. The April 2019 Unauthorized Volvo S60 Super-Bloom Photo Shoot...................................................................................................2

    B. Porch House and Schroeder Post Video and Still Images From the Super-Bloom Shoot on Two Public Social Media/Content Sharing Platforms – Instagram and Behance. ..................................3

        1. Instagram -- Features .............................................................4

        2. Instagram -- Terms of Use ....................................................5

        3. Behance -- Features and Terms of Service ............................6

    C. Volvo Re-Shares Super-Bloom Shoot Images on Instagram and Pinterest......................................................................................7

        1. Pinterest's Features and Terms of Service .............................7

    D. Volvo's Instagram Story Expired After 24 Hours and Volvo Removed the Pinterest Photos............................................................7

III. LEGAL STANDARD ..........................................................................8

IV. ARGUMENT........................................................................................9

    A. Schroeder's Copyright Claim Fails Because Volvo Had a Non-Exclusive License to Re-Post the Instagram Photographs......................9

        1. Pursuant to the IG Terms, Schroeder Granted Instagram a License and Instagram Granted Volvo a Sub-License That Authorized Volvo to Re-Share the Instagram Photographs. ................................................................10

        2. Schroeder Made His Instagram Account Public and Therefore Granted Volvo a Direct, Express License to Re-Share His Content. ...............................................11

        3. The IG Terms Also Allow Volvo to Post Copies of Instagram Content on Other Sites...............................................12

        4. Volvo Also Was Authorized to Post the Subject Photographs on Pinterest Pursuant to the Behance Terms of Use. ................................................................12

– i –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

|   |   |   | 5. | By Tagging Volvo, Schroeder Granted Volvo an Implied Non-Exclusive License To Share the Instagram Photographs. ................................................. 13 |
|---|---|---|---|---|
|   |   | B. | | Each of Sumida's Claims is Preempted by the Copyright Act ............. 14 |
|   |   |   | 1. | Sumida's State Law Claims are Preempted. ................................. 14 |
|   |   |   | 2. | Sumida's Second Claim for Alleged Lanham Act Violations is also Preempted Under the Copyright Act. ............. 17 |
|   |   | C. | | Sumida's Claim for Violation of the Lanham Act also Fails Because Volvo Did Not Suggest That Sumida Endorsed Volvo's Cars ..................................................................... 18 |
|   |   | D. | | Sumida's Claims for Misappropriation of Her "Likeness" Fail Because She Gave Consent and All Uses Were Incidental. .................. 20 |
|   |   |   | 1. | Sumida Consented to The Use of Her "Likeness" and Authorized Schroeder and Porch House to Post Her Image on Public Social Media Sites. ............................................. 20 |
|   |   |   | 2. | Sumida's Misappropriation Claims Also Fail Because Her Likeness Cannot be Identified in Many of the Subject Photographs and/or Because Her Likeness Was Incidental. ..................................................... 22 |
|   |   | E. | | Sumida's Claims For Attorney's Fees and Punitive Damages Should be Dismissed. ............................................. 23 |
|   |   |   | 1. | Sumida Is Not Entitled To Attorneys' Fees ................................. 23 |
|   |   |   | 2. | Sumida Is Not Entitled To Punitive Damages ............................. 24 |
| V. | | | | CONCLUSION ......................................................................... 24 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aligo v. Time-Life Books, Inc.*,
  1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ...................................... 22

*Alyeska Pipeline Serv. Co v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ............................................................................ 23

*Aquawood, LLC v. Toys "R" Us-Delaware, Inc.*,
  2016 WL 10576620 (C.D. Cal. Mar. 10, 2016) ............................. 18, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 8, 9

*Bank of the W. v. Superior Court*,
  2 Cal. 4th 1254 (1992) ........................................................................ 20

*Barnabas Clothing, Inc. v. Kabbage, Inc.*,
  2018 WL 9669565 (C.D. Cal. June 8, 2018) ...................................... 10

*Basil v. New Razor & Tie Enterprises, LLC*,
  2018 WL 3869480 (C.D. Cal. Feb. 14, 2018) ..................................... 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 8, 9

*Bondar v. LASplash Cosmetics*,
  2012 WL 6150859 (S.D.N.Y. Dec. 11, 2012) ..................................... 19

*Brammer v. Violent Hues Prods., LLC*,
  922 F.3d 255 (4th Cir. 2019) .............................................................. 10

*Cairns v. Franklin Mint Co.*,
  107 F. Supp. 2d 1212 (C.D. Cal. 2000) ......................................... 18, 19

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ............................................................ 18

*Carranza v. Lideres Entm't Grp.*,
  2009 WL 10675974 (C.D. Cal. June 29, 2009) ................................... 17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT VOLVO CAR USA LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ................................................................... 20

*Danielson v. Wells Fargo Bank*,
    2011 WL 4480849 (C.D. Cal. Sept. 26, 2011) .......................................... 23

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .................................................................................... 17

*Davis v. Elec. Arts Inc.*,
    775 F.3d 1172 (9th Cir. 2015) ................................................................... 22

*Delgado v. Nationstar Mortg. LLC*,
    2014 WL 2115218 (C.D. Cal. May 21, 2014) .......................................... 23

*Eastwood v. Superior Court of Los Angeles County*,
    149 Cal.App.3d 409 (1983) ....................................................................... 20

*Effects Assocs., Inc. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990) ..................................................................... 13

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................................... 10

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ....................................................... 11

*Fleet v. CBS, Inc.*,
    50 Cal.App.4th 1191 (1996) ..................................................................... 15

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...................................................... 10

*Goldsmith v. CVS Pharmacy, Inc.*,
    2020 WL 3966004 (C.D. Cal. May 5, 2020) ............................................ 23

*Indep. Living Ctr. of S. California, Inc. v. Kent*,
    909 F.3d 272 (9th Cir. 2018) ..................................................................... 23

*Interscope Records v. Time Warner, Inc.*,
    2010 WL 11505708 (C.D. Cal. June 28, 2010) ........................................ 13

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
    287 F.3d 866 (9th Cir. 2002) ..................................................................... 20

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

*Ji v. Bose Corp.,*
    538 F. Supp. 2d 349 (D. Mass. 2008) ....................................................... 19

*Jones v. Corbis Corp.,*
    815 F. Supp. 2d 1108 (C.D. Cal. 2011) .................................................... 21

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,*
    617 F.3d 1146 (9th Cir. 2010) ........................................................... 15, 16

*KNB Enterprises v. Matthews,*
    78 Cal.App.4th 362 (2000) .................................................................... 15

*Kodadek v. MTV Networks, Inc.,*
    152 F.3d 1209 (9th Cir. 1998) ............................................................... 15

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal.4th 1134 (2003) ......................................................................... 24

*Lafarga v. Magazine,*
    2014 WL 12573551 (C.D. Cal. July 18, 2014) ....................................... 12

*Lauter v. Rosenblatt,*
    2017 WL 6205784 (C.D. Cal. Dec. 6, 2017) .......................................... 17

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.,*
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) .................................................. 17

*Meribear Prods., Inc. v. Vail,*
    2014 WL 12597609 (C.D. Cal. Aug. 5, 2014) ........................................ 17

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.,*
    2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ........................................ 12

*Newcombe v. Adolf Coors Co.,*
    157 F.3d 686 (9th Cir. 1998) ................................................... 20, 21, 22

*Ozeran v. Jacobs,*
    798 F. App'x 120 (9th Cir. 2020) .......................................................... 24

*Patel Burica & Assocs., Inc. v. Lin,*
    2019 WL 6954256 (C.D. Cal. Dec. 19, 2019) ........................................ 12

*Perry v. MLB Advanced Media, L.P.,*
    2018 WL 5861307 (C.D. Cal. May 30, 2018) ......................................... 10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Plakhova v. Hood*,
  2017 WL 10592315 (C.D. Cal. June 20, 2017)............................................24

*R & A Synergy LLC v. Spanx, Inc.*,
  *2019 WL 4390564* (C.D. Cal. May 1, 2019) ...........................................20

*Rearden LLC v. Rearden Commerce, Inc.*,
  683 F.3d 1190 (9th Cir. 2012) .................................................................19

*Rodriguez v. Experian Servs. Corp.*,
  2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) ............................................10

*Salt Optics, Inc. v. Jand, Inc.*,
  2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) ...........................................12

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
  845 F.3d 1246 (9th Cir. 2017) .................................................................17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .....................................................................9

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .....................................................10

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014) ...........................................10

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .....................................................................9

*White v. Samsung Elecs. Am., Inc.*,
  971 F.2d 1395 (9th Cir. 1992) .................................................................18

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ...................................................................23

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ...................................................................9

*Yeager v. Cingular Wireless LLC*,
  673 F. Supp. 2d 1089 (E.D. Cal. 2009) ...................................................22

**Statutes**

15 U.S.C. § 1125(a)(1)...............................................................................18

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– vi –

17 U.S.C. § 301(a) ................................................................................ 14

Cal. Civ. Code § 3344(b)(1) ................................................................ 22

**Other Authorities**

3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A] (1989) .................... 13

https://en.wikipedia.org/wiki/Pinterest ............................................... 7

https://help.pinterest.com/en/topics/pins-and-boards; ................................ 7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jack Schroeder, a professional commercial automotive photographer ("Schroeder"), and Plaintiff Britni Sumida, a professional model ("Sumida") (collectively, "Plaintiffs"), try to make a mountain out of a molehill as they continue to exploit the brand, image, reputation and substantial social media reach of a venerable automotive company to promote themselves professionally.  Their claims that Volvo Car USA LLC ("Volvo") impermissibly shared Schroeder's photographs and misappropriated Sumida's image rights as part of an unauthorized "global advertising campaign" are false and disingenuous.  There was no such advertising campaign—at least not one that Volvo created.  Volvo simply used basic social media sharing/publishing platform features to re-post Schroeder's artistic depictions of Volvo's newly released/re-designed 2019 model S60 sedan (the "Volvo S60") months *after* Schroeder and others had already published (and tagged Volvo in) the subject photographs on their own public social media accounts.  As explained below, Volvo's actions were non-infringing by virtue of the licenses Volvo obtained under the terms of the sharing platforms at issue and by operation of law.

As also explained below, Sumida's purported "likeness" misappropriation and publicity violation claims are preempted, legally deficient and misdirected.  No one "photoshopped" Sumida's image in any of the subject photos, and Volvo never claimed or implied that Sumida endorsed any of its products.  Sumida willingly participated in a consumer product-centered photo shoot with other professionals, including Schroeder, who captured countless images of her as she posed alongside and inside the Volvo S60.  Sumida then authorized Schroeder and the others to include images of her posing with the Volvo S60 in a so-called (albeit unauthorized) "social campaign for Volvo Cars" that Volvo knew nothing about, let alone approved.  If, as Sumida now claims, her modeling career truly suffered as a result, Sumida only has herself, Schroeder and parties other than Volvo to blame.

– 1 –

## II.    SUMMARY OF RELEVANT FACTS

### A.    The April 2019 Unauthorized Volvo S60 Super-Bloom Photo Shoot

In early April 2019, Schroeder, Sumida and a video crew from Porch House Pictures ("Porch House"),[1] a Schroeder-affiliated production company [SAC, ¶ 27], traveled to a remote Southern California desert area enveloped in "super-bloom" wild flowers.  Without Volvo's knowledge or consent, they spent the entire day capturing stunning video and still images of a brand-new white Volvo S60 (the "Super-Bloom Shoot").  Thereafter, again without Volvo's knowledge, they created and began to publish an unauthorized "social campaign for Volvo Cars" featuring still and video images of the Volvo S60.  *See* RJN, Exh. 2.[2]  Although Schroeder now claims he conducted the Super-Bloom Shoot to "keep his portfolio up to date with images of current models of cars" [SAC, ¶ 16], his other allegations and his/Porch House's conduct reveal their true, commercial agenda.  *First*, they wanted to get Volvo's attention; *second*, they wanted to reach Volvo's vast global social media base (which includes other major automotive brands); *third*, they wanted to create the impression among Volvo's (a) social media followers, (b) current and prospective customers, and (c) competitors that they had been hired by Volvo to create a "super-bloom" social media campaign for the new Volvo S60; and *fourth*, they hoped their stunt would persuade Volvo and/or its competitors to hire them on future ad campaigns.[3]

---

[1] Porch House specializes in creating automotive films and has produced advertisements for Toyota, Jaguar, and BMW.  *See* Request for Judicial Notice ("RJN"), Exh. 1.

[2] Sumida posed in or with the Volvo S60 in many of these images.  SAC, ¶¶ 3, 16-17.

[3] They used the features of Instagram and other public social media accounts to achieve their first three goals.  In the case of Instagram, by simply "tagging" Volvo, they (1) instantly notified Volvo each time they posted Volvo S60 images on Instagram, and (2) distributed their unauthorized Volvo S60 "social campaign" to the 200,000-plus users who "follow" Volvo on Instagram.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**B.** **Porch House and Schroeder Post Video and Still Images From the Super-Bloom Shoot on Two Public Social Media/Content Sharing Platforms – Instagram and Behance.**

Plaintiffs <u>authorized</u> Porch House to publish Super-Bloom Shoot images on Porch House's public Instagram page.  *See* SAC, ¶ 28, n. 2.  Porch House tagged Volvo (along with Schroeder and Sumida) in many of these photographs.  *See e.g.* RJN, Exh. 3:



Porch House also (presumably, with Plaintiffs' consent) posted the still and video Super-Bloom Shoot on its public Behance page, which falsely represented to the public that Schroeder, Sumida and Porch House created the Super-Bloom Shoot as "**a social campaign for Volvo Cars**."[4]

---

[4] *See* RJN Exh. 2 at p. 1 ("'Bloom' is an integrated production from Porch House in collaboration with photographer **Jack Schroeder**.  We took full advantage of the beautiful super-bloom and took the new S60 out for it's [sic] debut.  Enjoy this short film and photo set with **Model Britni Sumida for Volvo Cars TM**."); *Id.*, at p. 2 ("Director/DP: Andrew Schneider … Photographer: **Jack Schroeder** … Production: Porch House … Model: **Britni Sumida** … Car: 2019 Volvo S60 ... **Client: Volvo**."); and *Id.* at p. 5 ("Volvo-Bloom.  This is a **social campaign for Volvo Cars**."). (Emphasis added).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 3 –

In addition, Schroeder posted (i) an unspecified number of Super-Bloom Shoot images on <u>his</u> public Behance "promotional page," and (ii) nine Super-Bloom Shoot images on <u>his</u> public Instagram page (the "Instagram Photographs").  *See* RJN Exh. 4; SAC, ¶¶ 18, 22.[5]

1.   Instagram -- Features

Instagram—a "free photo and video sharing" platform owned by Facebook—is among the most popular social media sites in the world.  In any given month, more than a billion people world-wide use Instagram's features to share and re-share photos, videos and other user generated content with their followers or with a select group of friends.  *See e.g.,* RJN, Exs. 5-6. Users can post content to Instagram through its mobile app or website, and can choose whether to share their uploaded content privately (i.e., only with the user's approved followers) or publicly (i.e., with anyone, including members of the public who have not created an Instagram account).  *See* RJN, Exs. 7-8.

Instagram's features allow users to share content in two ways: (1) a user can post photographs or videos to his/her/its Instagram page, in which event the posted content will appear in the "feed" of every other Instagram user who follows that person or entity,[6] and/or (2) a user can post photographs and videos in the form of a short "Instagram Story," in which event the posted content will appear in a row at the top of the "feed" of every other Instagram user who follows that person or entity.[7] The primary difference between the two sharing methods is that an Instagram Story

---

[5] Schroeder's public Instagram page, located at Instagram.com/jackschroedercreative, does not comport with these allegations.  Although Schroeder continues to follow Volvo Cars USA on Instagram (see Instagram.com/jackschroedercreative/following/), Schroeder's public Instagram page no longer displays the post described in paragraph 18 of the SAC.  Indeed, Schroeder's public Instagram account no longer reflects that he ever posted or re-posted any of the Instagram Photographs on any date.

[6] *See* RJN, Exh. 9 ("All posts from accounts you follow on Instagram will appear in your feed.").

[7] *See* RJN, Exh. 10 ("How do I see someone's Instagram story?").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

has a maximum length of 15 seconds and, generally, an Instagram Story automatically expires after 24 hours.[8]  Instagram explicitly permits a user to include photos posted by other Instagram users in their Instagram Story _if_ the posting user's "account is public and they've allowed resharing of their posts."[9]

Instagram also enables users to "tag" other Instagram users in the content they post.  Notably, when (as is the case with Porch House and Schroeder) a user's Instagram account is public, "anyone can see the photo or video, and the person [that user has] tagged will get a notification."  And, when a user tags another user in a photo or video, Instagram sends a notification to the tagged user and automatically adds that photo or video to the tagged user's profile.  _See_ RJN, Exh. 11.

### 2.   Instagram -- Terms of Use

Instagram requires every one of its users to accept and comply with the "Terms of Use" and "Data Policy" that appear in the hyperlinks on Instagram's "Sign Up" page (_see_ RJN, Exh. 12) and its "Privacy Policy." _See_ RJN, Exh. 13 ("When you create an Instagram account or use Instagram, you agree to these terms."); RJN, Exh. 14 ("Our Policy applies to all visitors, users, and others who access the Service."). Pursuant to the Terms of Service effective in April 2019, whenever an Instagram user shared, posted or uploaded photos or videos, that user granted Instagram a broad, royalty-free, transferable/sub-licensable license in and to that posted content, as follows:

> When you share, post, or upload content that is covered by intellectual property rights (like photos or videos) on or in connection with our Service, you hereby grant to us a nonexclusive, royalty-free, transferable, **sub-licensable, worldwide license** to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings)." RJN, Exh. 13 (emphasis added).

---

[8] _See_ RJN, Exh. 10 ("When does my Instagram Story disappear?").

[9] _See_ RJN, Exh. 10 ("How do I share someone's post from feed to my Instagram Story?").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Instagram's April 2019 "Data Policy" further provided that:

> When you share and communicate using our Products, you choose the audience for what you share…. **Public information can be seen by anyone, on or off our Products, including if they don't have an account**. **This includes** your Instagram username; any information you share with a public audience … and **content you share on a … public Instagram account**. … You, other people using … Instagram, and we can provide access to or send public information **to anyone on or off our Products**. … **Public information can also be seen, accessed, reshared** …. )." RJN, Ex 15 (emphasis added).

Pursuant to Instagram's Privacy Policy,[10] Instagram users were advised that when they post content (e.g., a photograph) publicly on Instagram, other Instagram users are granted a royalty-free, non-exclusive license to re-share that user content:

> By using our Service you understand and agree that we are providing a platform for you to post content, including photos, comments and other materials ("User Content"), to the Service and to share User Content publicly. **This means that other Users may search for, see, use, or share any of your User Content that you make publicly available through the Service**, consistent with the terms and conditions of this Privacy Policy and our Terms of Use…
>
> Any information or content that you voluntarily disclose for posting to the Service, such as User Content, becomes available to the public, as controlled by any applicable privacy settings that you set.  To change your privacy settings on the Service, please change your profile setting. **Once you have shared User Content or made it public, that User Content may be re-shared by others**.  RJN Exh. 14, (emphasis added).

### 3.   Behance -- Features and Terms of Service

"Behance, part of the Adobe family, is the leading online platform to showcase [and] discover creative work."  RJN, Exh. 16.  According to the Behance Terms of Service, "[b]y submitting your content to our Services, you also give other Behance users the right to share your content via various social media platforms integrated with Behance."  RJN, Exh. 17.  Pinterest is one of the social media platforms that is

---

[10] The Privacy Policy for April 2019 is not available on the Internet Archive Wayback Machine, but the November 2019 Privacy Policy matches the January 2019 Privacy Policy, thus indicating that the language from the January Privacy Policy was still in effect in April 2019.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  integrated with Behance.[11]

2  **C.    Volvo Re-Shares Super-Bloom Shoot Images on Instagram and**
3  **Pinterest.**

4  Plaintiffs allege that Volvo re-shared the Instagram Photographs in an

5  Instagram Story on or about November 19, 2019.  SAC, ¶ 20.  Plaintiffs also allege

6  that Volvo shared the Instagram Photographs, along with two other (unidentified)

7  photographs it obtained from Schroeder's Behance page (collectively, "Pinterest

8  Photographs"), on Volvo's Pinterest page.  SAC, ¶ 22.

9  1.    Pinterest's Features and Terms of Service

10  Pinterest, another popular content-sharing platform, functions like a virtual

11  bulletin board.[12]   On Pinterest, when users "pin" a photo or other content to their

12  board, other users are able to "re-pin" (i.e., copy and paste) that photo to their own

13  board.   Once content has been "re-pinned," the copy remains on the re-pinner's board

14  even if the original pinner has deleted their post.  *See* RJN Exh. 19 ("Copies of content

15  shared with others may remain even after you delete the content from your account.").

16  Pinterest allows a business user to update its "cover image"—i.e., the photo

17  collage that appears at the top of the business user's profile page—to automatically

18  display its most recent activity or "latest Pins."  *See* RJN, Exh. 21.  Thus, when Volvo

19  pinned the Pinterest Photographs to its profile page, some or all of those nine

20  photographs would appear in the cover image at the top of Volvo's profile page.  *See*

21  SAC, ¶ 21.

22  **D.    Volvo's Instagram Story Expired After 24 Hours and Volvo**
23  **Removed the Pinterest Photos.**

24  Plaintiffs allege that on November 20, 2019 and November 22, 2019, Schroeder

25  contacted Volvo and asked Volvo to remove the Instagram Photographs (which Volvo

26  _____

27  [11] *See* RJN Exh. 18 (showing Pinterest icon as option for sharing Behance work).

28  [12] *See* https://help.pinterest.com/en/topics/pins-and-boards;
https://en.wikipedia.org/wiki/Pinterest.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 7 –

re-shared exclusively in the Instagram Story it posted on November 19) and the Pinterest Photographs.  SAC, ¶¶ 23-24.  Plaintiffs acknowledge that Volvo "removed its [November 19, 2019] Instagram Story,"[13] but erroneously allege that Volvo "left the [Pinterest Photographs] on its verified Pinterest page."  SAC, ¶ 25.  In support of their Pinterest allegations, the SAC provides a link to a Pinterest page where Plaintiffs contend the Pinterest Photographs were still viewable as of July 23, 2020.[14]  As can be seen, however, that link does not locate photographs on *Volvo's* Pinterest account; rather, it locates photographs that have been re-pinned to a Pinterest page belonging to a *third party* Pinterest user with the account name "Gussin TPMS."[15]

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[13] As noted in Section II.A.1, *supra*, an Instagram Story vanishes after 24 hours. Thus, when Schroeder first contacted Volvo on November 20, the Instagram Photographs either were no longer accessible on Volvo's Instagram account or were about to disappear.

[14] SAC, ¶ 21 n. 1 (link to https://www.pinterest.com/pin/757238124832380012/)

[15] As explained in Section II.A.2, *supra*, once a photograph has been "re-pinned," the source location user is no longer able to move, modify, or delete the copy of the photograph that has been pasted to the destination location.  Thus, if the source location user later deletes his/her pinned copy of the photograph, the copy that has been re-pinned to the destination location (and any subsequent "re-pins" therefrom) is not affected.  Accordingly, the link Plaintiffs provide to a re-pinned copy of the Pinterest Photographs does not demonstrate that Volvo failed to remove the Pinterest Photographs from Volvo's Pinterest account.  Volvo did.  If Volvo had not, Plaintiffs surely would have provided a link to Volvo's account rather than a link to the "Gussin TMPS" account.  Moreover, Schroeder, as the copyright owner, can easily remove unauthorized copies of the Pinterest Photographs by serving Pinterest with a "Copyright Removal request" or a DMCA take-down notice.  *See* RJN Exh. 20 ("If you believe that your copyrights are being infringed and you'd like to have content removed, visit our copyright page to submit a copyright removal notice to us. … Only the owner of a copyright (or an authorized agent acting on their behalf) can submit a copyright removal request.").The fact that he still has not done so speaks volumes.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  alleged." *Iqbal*, 556 U.S. at 678.  It is "plaintiff's obligation to provide . . . more than

2  labels and conclusions, and a formulaic recitation of the elements of a cause of action

3  will not do." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a

4  cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556

5  U.S. at 678.  Moreover, federal courts are not "required to accept as true allegations

6  that are merely conclusory, unwarranted deductions of fact, or unreasonable

7  inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

8      "A court may… consider certain materials—documents attached to the

9  complaint, documents incorporated by reference in the complaint, or matters of

10  judicial notice—without converting the motion to dismiss into a motion for summary

11  judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

12  **IV.  ARGUMENT**

13      **A.  <u>Schroeder's Copyright Claim Fails Because Volvo Had a Non-<br>Exclusive License to Re-Post the Instagram Photographs.</u>**

14

15      Simply put, when Schroeder created his Instagram account, he agreed to and

16  became bound by Instagram's Terms of Use, Data Policy, Privacy Policy, and other

17  terms of service (collectively, the "IG Terms").  The IG Terms, among other things,

18  grant non-exclusive licenses to Instagram and Volvo that allowed Volvo to re-share

19  the Instagram Photographs.  In addition, by tagging Volvo in the subject photographs,

20  Schroeder (and Porch House) granted Volvo an implied non-exclusive license to share

21  the Subject Photographs on Instagram and on other social media sites.  As a

22  consequence, Volvo did not infringe Schroeder's copyright interests when it re-shared

23  any of the photographs at issue.  *See e.g., Worldwide Church of God v. Philadelphia*

24  *Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) ("The existence of a license

25  creates an affirmative defense to a claim of copyright infringement.").

26

27

28

REED SMITH LLP<br>A limited liability partnership formed in the State of Delaware

– 9 –

1.      <u>Pursuant to the IG Terms, Schroeder Granted Instagram a License and Instagram Granted Volvo a Sub-License That Authorized Volvo to Re-Share the Instagram Photographs.</u>

When Schroeder created his Instagram account, he expressly consented to the IG Terms hyperlinked directly below the "sign up" button.  All such terms (then existing and as subsequently modified by Instagram) were and continued to be binding on and enforceable as to Schroeder as a matter of law.[16]

In accordance with Instagram's Terms of Use, when Schroder posted the Instagram Photographs, he granted "to Instagram a non-exclusive, fully paid and royalty free, transferable, sub-licensable**,** worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of [Schroeder's] (consistent with [his] privacy and application settings)."  RJN, Exh. 13.  These licenses are essential because the Instagram platform, which is "specifically designed for the participatory 'sharing' — or copying — of content."  *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 269 (4th Cir. 2019).   The sub-license

---

[16] Courts have routinely found that when an account user agrees to be bound by a website's terms and conditions when creating an account, and those terms are hyperlinked near the webpage's sign-up button, the terms are enforceable.  *See e.g. In re Facebook Biometric Info. Privacy Litig..*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (finding that plaintiffs were bound by terms of use based on their creating a Facebook account on a page similar to Instagram sign up page); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (same); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' … a binding contract was created here.")*; Barnabas Clothing, Inc. v. Kabbage, Inc.*, 2018 WL 9669565, at *3 (C.D. Cal. June 8, 2018) (""The Court agrees that Plaintiffs entered into valid arbitration agreements with Defendants. Plaintiffs indicated that they accepted the Arbitration Provision by selecting the "Accept" prompt located in the Kabbage Platform. This is sufficient to create an agreement under … California law."); *Perry v. MLB Advanced Media, L.P.*, 2018 WL 5861307, at *3 (C.D. Cal. May 30, 2018) ("[T]he Court agrees that Plaintiff's acceptance of the Terms of Use— specifically, her clicking the 'Buy & Accept Terms' button at the time she purchased the Subscription—was sufficient to bind her to the Arbitration Provision."); *Rodriguez v. Experian Servs. Corp.*, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (enforcing terms of use because where the "website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgment, which stated, "By clicking the button above ... you agree to our Terms of Use.") *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (finding terms of service enforceable when "during the account creation and registration processes, each named Plaintiff clicked a box or button that appeared near a hyperlink to the TOS to indicate acceptance of the TOS").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Schroeder granted to Instagram, in turn, allowed Volvo (and other users) to copy and

2    re-share the Instagram Photographs, including in an Instagram Story.[17]  Volvo's use of

3    the Instagram Photographs therefore was permissible and did not infringe Schroeder's

4    copyright interests.

5                  2.       <u>Schroeder Made His Instagram Account Public and Therefore</u>
                          <u>Granted Volvo a Direct, Express License to Re-Share His Content.</u>

6

7          In addition to the foregoing sub-license Volvo obtained from Instagram,

8    because Schroeder set his account to "public," Schroeder granted Volvo a *direct*

9    license to re-share the Instagram Photographs.  *See* RJN Exh. 14 (". . . other Users

10   may search for, see, use, **or share any of your User Content that you make**

11   **publicly available through the Service**" . . .  "**Once you have shared User Content**

12   **or made it public, that User Content may be re-shared by others**.")  (Emphasis

13   added.)  Instagram's Privacy Policy also expressly stated that content posted to a

14   public account can be shared by other users when they create an Instagram Story.[18]  In

15   addition, the governing Instagram Data Policy provided that "other people using …

16   Instagram … can provide access to or send public information **to anyone on or off**

17   **our Products**" and that "public information can also be seen, accessed, reshared or

18   downloaded" by others.  RJN, Exh. 15 (emphasis added).  Thus, by electing to make

19   his account public <u>and</u> by not choosing settings that would prevent others from re-

20   sharing his content, Schroeder granted Volvo and other Instagram users a license to

21   re-share the Instagram Photographs and all the other content Schroeder posts on his

22   Instagram page.  *See Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1109, 1116 (D. Nev.

23   2006) (finding that "Google held an implied license to reproduce and distribute copies

24   _____

25   [17] Instagram permits users to re-share content posted by other users by, among other
     means, utilizing Instagram's tools and features to create Instagram Stories.  *See* RJN,

26   Exh. 10 ("How do I share someone's post from feed to my Instagram Story?").

27   [18] *See* RJN, Exh. 10 ("You can only share someone's post from Feed to your story if
     their account is public and they've allowed resharing of their posts… If you have a

28   public account, you can turn off the ability for others to re-share your posts.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of the copyrighted works at issue" where the plaintiff had "knowledge that he could prevent [defendant's] use," but "instead made a conscious decision to permit it.").

       3.    <u>The IG Terms Also Allow Volvo to Post Copies of Instagram Content on Other Sites.</u>

The terms of the direct and indirect usage rights licensed to users under the IG Terms are extremely broad. The terms of these licenses do not state, nor can they reasonably be interpreted as stating, that Volvo may only re-share publicly posted content on the Instagram platform. Volvo thus had the right to make copies of the publicly posted Instagram Photographs and post those copies on third party sites or platforms such as Pinterest.[19]

       4.    <u>Volvo Also Was Authorized to Post the Subject Photographs on Pinterest Pursuant to the Behance Terms of Use.</u>

Pursuant to the Behance Terms of Service, Behance users can share content posted by other Behance users on Pinterest and the other sharing platforms that are integrated with Behance. Accordingly, in addition to the broad direct and indirect licenses Volvo obtained under the IG Terms, Volvo had the right to copy and paste Super-Bloom Shoot photographs from Behance Volvo's Pinterest profile page.[20]

---

[19] Volvo notes that Plaintiffs do <u>not</u> (nor can they) allege that Volvo used the "Instagram API" embedding tool or otherwise embedded any of the subject photographs on Pinterest or elsewhere, and Volvo did not do so. Volvo merely copied images from Schroeder's public Instagram account and/or Schroeder's public Behance account, re-posted those images on Pinterest, and displayed those images as permitted under Pinterest's terms and conditions.

[20] Schroeder alleges that two of the photographs Volvo posted on its Pinterest profile page had not previously been posted to his Instagram page. The SAC, however, fails to identify those two photographs (*see* SAC, ¶ 22) and, thus, does not sufficiently state a claim for copyright infringement on that basis as to those two photographs. *See Lafarga v. Magazine*, 2014 WL 12573551, at *3 (C.D. Cal. July 18, 2014) (granting motion to dismiss because the plaintiff only named "two of his paintings that were published in the Magazine" but did "not identify the other four" and thus failed to adequately identify the "specific material" that the defendant allegedly infringed); *Patel Burica & Assocs., Inc. v. Lin*, 2019 WL 6954256, at *4 (C.D. Cal. Dec. 19, 2019) ("Here, the complaint does not describe, in any level of specificity, what … [the defendants] allegedly copied. That is insufficient."); *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) ("The FAC similarly fails to allege sufficient facts that show copying because it is not clear what works are at issue."); *Salt Optics, Inc. v. Jand, Inc.*, 2010 WL 4961702, at *6 (C.D.

---

– 12 –

1
2
5.    By Tagging Volvo, Schroeder Granted Volvo an Implied Non-Exclusive License To Share the Instagram Photographs.

3    As explained in Section IV. A. 2, *supra*, because Schroeder posted the
4    Instagram Photographs on his public account, the IG Terms granted Volvo an express
5    non-exclusive license to share the Instagram Photographs in an Instagram Story.  In
6    addition, the totality of the facts and circumstances alleged in the SAC establish that
7    Schroeder also granted Volvo an implied, non-exclusive license to share the subject
8    photographs as a matter of law.

9    "'[A] nonexclusive license may be granted orally, or may even be implied from
10   conduct.'" *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (*citing* 3
11   M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A], at 10–36 (1989)
12   ("Nimmer").   "*Effects Associates* stands for the proposition that when three
13   requirements are met—(1) the work was created for defendant or at defendant's
14   request; (2) the work was delivered to defendant by plaintiff; and (3) plaintiff intended
15   defendant to use the work—an implied license exists... However, nothing in *Effects*
16   *Associates* establishes that these three elements are *necessary* requirements for an
17   implied license… 'Where the totality of the parties' conduct indicates an intent to
18   grant such permission, the result is a nonexclusive license.'" *Interscope Records v.*
19   *Time Warner, Inc.*, 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010) (*citing*
20   Nimmer § 10.03[A][7]).  (Emphasis added.)

21   Here, the combined actions of Schroeder and his affiliate/agent (Porch House)
22   indicate that Schroeder intended to grant Volvo permission to re-share the subject
23   photographs on social media.  Specifically, when Schroeder authorized Porch House
24   to tag Volvo, Sumida and him in the Instagram Photographs, they triggered a series of
25   events.  *First*, Volvo was notified; *second*, Volvo received a copy of the Instagram
26   Photographs; and *third*, a copy of the Instagram Photographs effectively was

27
28
Cal. Nov. 19, 2010) ("Plaintiff makes no attempt to identify which portions of the
website or catalog it accuses Defendants of infringing…. Plaintiff needs to delineate
more clearly … which facts it alleges in support of its copyright claim.").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 13 –

distributed to every Instagram user who followed Volvo, Schroeder or Sumida on Instagram.  Also, as noted above, when Schroeder published and authorized Porch House to publish their Super-Bloom Shoot images on their public Behance pages, they falsely represented to the public that the Super-Bloom Shoot images were created for Volvo as part of Volvo's social media campaign for its newly released Volvo S60,[21] and they exploited Volvo's proprietary designs and famous marks for their own commercial advantage.  As a consequence, Volvo submits Schroeder is equitably estopped from claiming the subject photographs were not created at Volvo's request, and Volvo further submits that the totality of Schroder's conduct demonstrates that Volvo had a reasonable basis under the *Interscope* test to conclude it was authorized to re-share these photographs on social media.[22]

**B.   Each of Sumida's Claims is Preempted by the Copyright Act**

1.   Sumida's State Law Claims are Preempted.

Each of Sumida's purported Third, Fourth, Fifth and Sixth Claims is based on state law,[23] and each is preempted under the Copyright Act. The Copyright Act

---

[21] See RJN, Ex. 2, at p. 1 ("'Bloom' is an integrated production from Porch House in collaboration with photographer **Jack Schroeder**.  We took full advantage of the beautiful super-bloom and took the new S60 out for it's [sic] debut.  Enjoy this short film and photo set with **Model Britni Sumida for Volvo Cars** ᴛᴍ"); p. 2 ("Director/DP: Andrew Schneider … Photographer: **Jack Schroeder** … Production: Porch House … Model: **Britni Sumida** … Car: 2019 Volvo S60... **Client: Volvo**."); p. 5 ("Volvo-Bloom.  This is a **social campaign for Volvo Cars**.") (Emphasis added).

[22] The allegations in paragraph 18 of the SAC <u>only</u> address Schroeder's alleged April 23, 2019, Instagram post and do not tip the scales in Schroeder's favor.  As already explained, Volvo did not need Schroeder's permission to re-share any *photos* Schroeder had uploaded to his public Instagram account and, indeed, the allegations in paragraph 18 do not show that Volvo was seeking authorization to share.  To the contrary, paragraph 18 shows that Volvo sought consent to share Schroeder's April 23 *post* <u>on Volvo's website</u>.  Schroeder does not allege Volvo ever shared Schroeder's April 23 Instagram post (or any others), and Volvo never did.  Volvo only re-shared *photographs* months later, *after* they had been re-published on Instagram and Behance by Schroeder and Porch House, and after Schroeder and Porch House had falsely claimed the Super-Bloom Shoot photos were a "social campaign for Volvo Cars."

[23] Sumida's Third through Sixth Claims allege, respectively, violation of California Bus. and Prof. Code §§17200 et seq.; Unfair Competition under California common law; violation of Cal. Civ. Code § 3344; and Misappropriation of Likeness under California common law.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 14 –

expressly preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a).  A state law cause of action is preempted by the Copyright Act if (1) the rights that a plaintiff asserts under state law are rights that are equivalent to those protected by the Copyright Act, and (2) the work involved falls within the "subject matter" of the Copyright Act.  *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).

California state courts and federal courts in this circuit have held that the state law misappropriation claims asserted by Sumida are preempted under the Copyright Act.  In *Fleet v. CBS, Inc*., 50 Cal.App.4th 1191 (1996), an actor brought a claim for misappropriation of his name, likeness and image.  There, similar to Sumida's claims here, the *Fleet* plaintiff's misappropriation claim was based solely on the alleged unauthorized distribution of his performance in a motion picture.  In rejecting those state law claims, the court in *Fleet* held "that to the extent California law would permit such a claim, it was preempted by federal copyright law."  *Id*., at 1913.  In *KNB Enterprises v. Matthews*, 78 Cal.App.4th 362 (2000), however, the Court of Appeal refused to apply *Fleet* more broadly and limited *Fleet* to instances where the publicity claims are asserted only against the copyright owner.  "We do not believe a Section 3344 claims is preempted under Fleet where, as here, the defendant has no legal right to publish the copyrighted work."  *Id*., at 374.  More recently, however, in *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1150 (9th Cir. 2010), the Ninth Circuit rejected the reasoning and decision of the California Court of Appeal in *KNB* and held that the same state law claims asserted by here by Sumida are preempted under the Copyright Act.

In *Jules Jordan,* the plaintiff/adult film actor claimed that the defendant infringed on his copyright though the "repeated unauthorized reproduction, counterfeiting, and sale of such counterfeit copies of Plaintiffs' copyrighted works to third parties."  *Id.* at 1154.  The plaintiff also claimed that using his image on the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 15 –

1   DVD packaging associated with the copyrighted works violated his rights of publicity.

2   In dismissing the actor's right of publicity claims on the basis of copyright preemption

3   in *Jules Jordan*, the Ninth Circuit held as follows:

4   > We do not read *Fleet* or the Copyright Act so narrowly.
5   > Whether a claim is preempted under Section 301 does not turn
6   > on what rights the alleged infringer possesses, but on whether
    > the rights asserted by the plaintiff are equivalent to any of the
7   > exclusive rights within the general scope of the copyright. The
    > question is whether the rights are works of authorship fixed in a
8   > tangible medium of expression and come within the subject
9   > matter of the Copyright Act.  If a plaintiff asserts a claim that is
    > the equivalent of a claim for infringement of a copyrightable
10  > work, that claim is preempted, regardless of what legal rights
    > the defendant might have acquired.  *Id.* at 1154-55.
11

12  The court concluded that the plaintiff's "right of publicity claim falls within the

13  subject matter of copyright, and that the rights he asserts are equivalent to the rights

14  within the scope of § 106 of the Copyright Act" because "[t]he essence of [plaintiff's]

15  claim is that the … defendants reproduced and distributed the DVDs without

16  authorization." *Id.* at 1155.

17  Substantively, Sumida's claim is no different than the claim asserted by the

18  plaintiff in *Jules Jordan*.  In *Jules Jordan*, the plaintiff knowingly provided acting

19  services on camera in copyrighted motion pictures.  Here, Sumida likewise knowingly

20  provided modeling services on camera in copyrighted photographs.  In *Jules Jordan*,

21  the plaintiff did not take issue with the distribution of the movie in general; instead, he

22  took issue with the defendant's specific unauthorized reproduction and sale of the

23  movie.  Here, Sumida similarly does not take issue with the distribution of the subject

24  photographs <u>in general</u> (indeed, she authorized Schroeder and Porch House to publish

25  and allowed them to tag her (and Volvo) in the subject photographs—thereby making

26  the photographs available to all of Volvo's and Sumida's Instagram followers);

27  instead, she takes issue with the fact that *Volvo* re-shared Super-Bloom Shoot images

28  of her and the Volvo S60 without <u>her</u> permission.  Thus, as with the plaintiff in *Jules*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 16 –

1  *Jordan*, the gravamen of Ms. Sumida's "right of publicity" claims is that Volvo

2  redistributed copyrighted photographs depicting her image without her permission.

3  As the *Jules Jordan* court held, such state law claims are squarely within the subject

4  matter of copyright and therefore are preempted under the Copyright Act.

5          2.   <u>Sumida's Second Claim for Alleged Lanham Act Violations is also</u>

6                <u>Preempted Under the Copyright Act.</u>

7        Sumida's Lanham Act claim similarly is preempted under the Copyright Act.

8  Numerous courts in this circuit and district have applied the reasoning in *Jules Jordan*

9  and the US Supreme Court decision in *Dastar Corp. v. Twentieth Century Fox Film*

10  *Corp.*, 539 U.S. 23 (2003) to determine that Lanham Act claims based on the alleged

11  unauthorized use of a person's likeness in a copyrighted work are preempted under the

12  Copyright Act.  *See e.g. Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ*

13  *Servs., LLC,* 845 F.3d 1246, 1250 (9th Cir. 2017) ("When the claim is more accurately

14  conceived of as attacking unauthorized copying, *Dastar* requires us to avoid

15  recognizing a "species of mutant copyright law" by making such claims cognizable

16  under the Lanham Act."); *Meribear Prods., Inc. v. Vail,* 2014 WL 12597609, at *3

17  (C.D. Cal. Aug. 5, 2014) ("*Dastar* controls this case. MBH's Section 43(a) claim is

18  premised on the theory that Defendants essentially plagiarized MBH's design work by

19  presenting it as Vail's work."); *Lauter v. Rosenblatt,* 2017 WL 6205784, at *7 (C.D.

20  Cal. Dec. 6, 2017) ("Because that unauthorized distribution falls squarely within the

21  Copyright Act, Plaintiff's Lanham Act claim against EBAC is preempted."); *Lions*

22  *Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.,* 170 F. Supp. 3d 1249, 1265 (C.D.

23  Cal. 2016) ("The same kind of preemption principle applies for federal Lanham Act

24  causes of action as for state and common-law causes of action.") *Carranza v. Lideres*

25  *Entm't Grp.,* 2009 WL 10675974, at *3 (C.D. Cal. June 29, 2009) ("In addition, UMG

26  correctly notes that all of Plaintiff's Lanham Act claims . . . as currently alleged,

27  would be preempted by the Copyright Act as explained by the Supreme Court in

28  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  Carranza is

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 17 –

1  essentially claiming in these causes of action that UMG took his work and reproduced,

2  distributed, and sold it—all rights protected by the Copyright Act.")  *See also Basil v.*

3  *New Razor & Tie Enterprises, LLC*, 2018 WL 3869480, at *4 (C.D. Cal. Feb. 14,

4  2018) ("Basil's Lanham Act claim alleges no well-pleaded facts that would support a

5  claim that is not preempted by the Copyright Act …. The Court therefore dismisses

6  the SAC's Lanham Act claim."); *Aquawood, LLC v. Toys "R" Us-Delaware, Inc.*,

7  2016 WL 10576620, at *3 (C.D. Cal. Mar. 10, 2016) (dismissing unfair competition

8  claims because they were preempted by the Copyright Act).

9       **C.     Sumida's Claim for Violation of the Lanham Act also Fails Because**

10            **Volvo Did Not Suggest That Sumida Endorsed Volvo's Cars.**

11       Sumida alleges that Volvo violated section 43(a) of the Lanham Act by

12  "creating the false impression that Sumida endorses Volvo."  SAC, ¶ 49.  Section

13  43(a) of the Lanham Act provides, in pertinent part, that "any person who… uses in

14  commerce any word, term, name, symbol, or device, or any combination thereof, or

15  any false designation of origin, false or misleading description of fact, or false or

16  misleading representation of fact, which … is likely to cause confusion, or to cause

17  mistake, or to deceive as to the … sponsorship, or approval of his or her goods,

18  services… shall be liable in a civil action by any person who believes that he or she is

19  or is likely to be damaged by such act."  15 U.S.C. § 1125(a)(1).  Thus, in order to

20  state a claim under the Lanham Act, Sumida must establish that Volvo's ad created a

21  likelihood of confusion as to whether she was endorsing Volvo's products.  *See White*

22  *v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992).

23       "Under the law of false endorsement, likelihood of customer confusion is the

24  determinative issue."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir.

25  2002).  "[N]ot all uses of a [person's] image are actionable under § 1125(a).  Only

26  uses which suggest sponsorship or approval are prohibited." *Cairns v. Franklin Mint*

27  *Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000).  The Lanham Act "prohibits only

28  false endorsement, not mere use of an image or name."  *Id.*  "The 'likelihood of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 18 –

confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1209 (9th Cir. 2012). "To succeed, a plaintiff must show more than simply a possibility of such confusion." *Id.*[24]

Sumida does not allege that Volvo made any explicit statement that she was endorsing Volvo's products. Indeed, Sumida does not (and cannot) allege that Volvo used her name in connection with any of images at issue or otherwise. Instead, Sumida alleges that Volvo created the impression that Sumida endorsed the Volvo merely by sharing images of Sumida as she posed with the Volvo S60. Sumida's allegations are insufficient as a matter of law. Merely posting the subject photographs on its social media pages, without more, does not constitute an endorsement of Volvo's products. *See Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (dismissing Lanham Act claim because "[d]efendants' use of the image of Princess Diana on their products and the words "Diana, Princess of Wales," to describe their products does not imply endorsement by plaintiff.").

The fact that Sumida is a professional model also is fatal to her Lanham Act claim. *See Ji v. Bose Corp.*, 538 F. Supp. 2d 349, 353 (D. Mass. 2008) (finding no likelihood of confusion as to model's endorsement where Bose used her image in an advertisement); *Bondar v. LASplash Cosmetics*, 2012 WL 6150859, at *7 (S.D.N.Y. Dec. 11, 2012) ("[T]he misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was "endorsing" a product, as opposed to lending her image to a company for a fee.").

Moreover, any incidental "confusion" as to whether Sumida was endorsing

---

[24] Courts look to eight factor when determining whether there is a likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Id*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Volvo's products was self-inflicted.   Sumida voluntarily posed with the Volvo S60,

2   and she then authorized automotive industry advertising professionals—Schroeder and

3   Porch House—to publish those photographs on Instagram (where she *and* <u>Volvo were</u>

4   <u>tagged</u>) and on Behance (where they identified her, by name, as a model "for Volvo

5   Cars," and falsely represented that the photographs of her posing with the Volvo S60

6   were part of a Volvo-authorized "social campaign for Volvo Cars.").   Volvo clearly

7   did not create any confusion as to whether Sumida endorsed its products.   Her

8   Lanham Act claim fails as a matter of law.[25]

9          **D.**   <u>**Sumida's Claims for Misappropriation of Her "Likeness" Fail**</u>

10              <u>**Because She Gave Consent and All Uses Were Incidental.**</u>

11              1.   <u>Sumida Consented to The Use of Her "Likeness" and Authorized</u>

11              <u>Schroeder and Porch House to Post Her Image on Public Social</u>

12              <u>Media Sites.</u>

13          "To sustain a common law cause of action for commercial misappropriation, a

14   plaintiff must prove: '(1) the defendant's use of the plaintiff's identity; (2) the

15   appropriation of plaintiff's name or likeness to defendant's advantage, commercially or

16

17   [25]   The Ninth Circuit has "consistently held that state common law claims of unfair
    competition and actions pursuant to California Business and Professions Code §
18   17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v.*
    *News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir. 1994).   Thus, because Lanham Act
19   claim fails, its claims for "common law unfair competition" and UCL claim must also
    be dismissed.  *See e.g. Japan Telecom, Inc. v. Japan Telecom Am. Inc.,* 287 F.3d 866,
20   875 (9th Cir. 2002)("[Plaintiff's California unfair competition claim fails because its
    related Lanham Act claims fail."); *R & A Synergy LLC v. Spanx, Inc., 2019 WL*
21   *4390564, at *15* (C.D. Cal. May 1, 2019) ("Plaintiff's state law claim for unfair
    competition realleges the same facts and reasserts the same arguments as embodied by
22   Plaintiff's Lanham Act claims. As described above, Plaintiff has failed to sufficiently
    plead in the SAC any plausible claim for relief under the Lanham Act. Therefore, …
23   the Court GRANTS Defendant's motion to dismiss Plaintiff's derivative state law
    claim.").

24   Moreover, "the common law tort of unfair competition is generally thought to be
25   synonymous with the act of 'passing off' [or palming off] one's goods as those of
    another." *Aquawood, LLC v. Toys "R" Us-Delaware, Inc.,* 2016 WL 10576620, at *2
26   (C.D. Cal. Mar. 10, 2016) (*citing Bank of the W. v. Superior Court,* 2 Cal. 4th 1254,
    1263 (1992)).   "'Passing off'" consists of confusing the public and misleading them
27   into thinking that defendant's product is actually the plaintiff's.  *Id.*   There are no
    allegations that Volvo misled the public into thinking that Volvo's products were
28   actually Sumida's, and thus her common law unfair competition claim also fails for
    this additional reason.

– 20 –

otherwise; (3) lack of consent; and (4) resulting injury.'" *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (*citing Eastwood v. Superior Court of Los Angeles County*, 149 Cal.App.3d 409, 417 (1983)). "Furthermore, California Civil Code § 3344 provides a statutory remedy for commercial misappropriation. 'Under section 3344, a plaintiff must prove all the elements of the common law cause of action. In addition, the plaintiff must allege a knowing use [without consent] by the defendant as well as a direct connection between the alleged use and the commercial purpose.'" *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011) (citing *Newcombe*, 157 F.3d at 692).

Both of Sumida's misappropriation of likeness claims fail because she posed with and in the Volvo S60 and then allowed Schroeder and Porch House to publicly disseminate the Subject Photographs, thereby manifesting her consent to the use of her likeness in conjunction with the vehicle. In *Jones*, the plaintiff (actress Shirley Jones) posed for "red carpet" photos taken by individual photographers, who then licensed their photographs to the defendant. When the defendant displayed the images on its website, Ms. Jones sued for misappropriating her name and likeness. *Id.* at 1110-1111. The court held that Ms. Jones could not maintain an action for misappropriation of her likeness because she consented to having her photograph taken and knew that the images would be distributed. *Id.* 1113-4. Moreover, the court rejected the actress' argument that "she did not consent to Defendant's placement of sample images on its websites for the purpose of soliciting customers to sell copyright licenses for the images" because her "consent is measured from Plaintiff's manifested action or inaction." *Id.* at 1114.

As in *Jones*, Sumida consented to being photographed with the Volvo S60 and she knew that Schroeder would publish those photographs. She also allowed Porch House (a production company specializing in automobile advertisements) to publish images of her and the Volvo S60. Having done so, Sumida cannot later claim that never consented to the use of her likeness in conjunction with the Volvo S60.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Moreover, she cannot contend that Volvo had reason to know she had not such,

2    especially after Schroeder had previously offered to license the subject photographs to

3    Volvo for use on Volvo's website.  *See* SAC, ¶ 19.  If anything, Schroeder's offer to

4    license photographs of Sumida and the Volvo S60 reinforced the existing logical

5    inference that Sumida had consented.  In any event, the facts do not establish that

6    Volvo knew or should have known Sumida's consent had not been obtained and thus

7    her misappropriation claim under California Civil Code section 3344 necessarily fails

8    as a matter of law.

9                  2.    Sumida's Misappropriation Claims Also Fail Because Her
                        Likeness Cannot be Identified in Many of the Subject Photographs
10                       and/or Because Her Likeness Was Incidental.

11          To state a claim for misappropriation, a plaintiff's likeness must be "readily

12   identifiable."  *Newcombe*, 157 F.3d at 692.  "A person is deemed to be readily

13   identifiable from a photograph "'when one who views the photograph with the naked

14   eye can reasonably determine that the person depicted in the photograph is the same

15   person who is complaining of its unauthorized use.' Cal. Civ. Code § 3344(b)(1)." *Id.*

16   In several of the photographs, Sumida's image blurred or obscured.  In others, her

17   back is to the camera or only her silhouette is visible.  Sumida cannot state a claim for

18   misappropriation of likeness as to any such photograph because she is not readily

19   identifiable.

20          Moreover, even where Sumida could be identified, her claims still fail because

21   the use of her likeness was incidental.  "[I]ncidental use of a name or likeness does not

22   give rise to liability for invasion of privacy by appropriation."  *Aligo v. Time-Life*

23   *Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994); *Yeager v. Cingular*

24   *Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009).  The following factors

25   are relevant to whether a use is incidental: "(1) whether the use has a unique quality or

26   value that would result in commercial profit to the defendant; (2) whether the use

27   contributes something of significance; (3) the relationship between the reference to the

28   plaintiff and the purpose and subject of the work; and (4) the duration, prominence or

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  repetition of the name or likeness relative to the rest of the publication." *Davis v.*
2  *Elec. Arts Inc.*, 775 F.3d 1172, 1180 (9th Cir. 2015).

3      None of the foregoing factors establish that Sumida's presence in the subject
4  photographs is anything but incidental.  In each such photograph, the Volvo S60 and
5  the California Super-bloom, not Sumida, were the focus.  As Plaintiffs admit, "the
6  purpose of the Photos was to hone [Schroeder's] skills, keep his portfolio up to date
7  with images of current models of cars—in this case, the 2019 Volvo S60—and to take
8  advantage of the 'super-bloom' of wildflowers happening in Southern California at
9  the time."  SAC, ¶ 16.

10  **E.    Sumida's Claims For Attorney's Fees and Punitive Damages Should
11  be Dismissed.**

12      Prayers for relief that are unavailable as a matter of law are properly challenged
13  by a Rule 12(b)(6) motion to dismiss rather than a Rule 12(f) motion to strike.  *See*
14  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010);  *see also*
15  *Danielson v. Wells Fargo Bank*, 2011 WL 4480849, at *3 (C.D. Cal. Sept. 26, 2011)
16  ("The Ninth Circuit has implicitly authorized the use of a 12(b)(6) motion to challenge
17  a prayer for damages precluded by law*."); Delgado v. Nationstar Mortg. LLC*, 2014
18  WL 2115218, at *7 (C.D. Cal. May 21, 2014) ("[A] court must evaluate damages
19  allegation[d] under Rule 12(b)(6)."); *Goldsmith v. CVS Pharmacy, Inc.*, 2020 WL
20  3966004, at *10 (C.D. Cal. May 5, 2020) (construing a Rule 12(f) motion to strike
21  punitive damages as a 12(b)(6) motion to dismiss).

22      Sumida seeks attorneys' fees and punitive damages in the SAC's prayer,
23  however, she is not entitled to either of these remedies.

24      1.    Sumida Is Not Entitled To Attorneys' Fees
25      "The general rule in federal courts is that 'absent statute or enforceable contract,
26  litigants pay their own attorneys' fees.'" *Indep. Living Ctr. of S. California, Inc. v.*
27  *Kent*, 909 F.3d 272, 281 (9th Cir. 2018) (citing *Alyeska Pipeline Serv. Co v.*
28  *Wilderness Soc'y*, 421 U.S. 240. 257 (1975)).  Ms. Sumida's request for attorneys'

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 23 –

1   fees is based on California Civil Code section 3344(a).  SAC, ¶ 71.  However as

2   explained in section IV.D., *supra,* this cause of action fails as a matter of law because

3   Sumida consented to the use of her likeness by posing for the photographs and none of

4   the allegations suggest Volvo had knowledge that she had not given her consent.

## 2.   Sumida Is Not Entitled To Punitive Damages

6          Sumida's punitive damages request appears to be in connection with her causes

7   of action for violation of the Lanham Act [SAC, ¶ 58], Unfair competition in violation

8   of the UCL [SAC, ¶ 65], violation of section 3344(a) [SAC, ¶ 75], and common law

9   misappropriation of her likeness [SAC, ¶ 79].  Preliminarily, punitive damages are not

10  available for a violation of the UCL. *See Ozeran v. Jacobs*, 798 F. App'x 120, 122

11  (9th Cir. 2020) ("Neither compensatory nor punitive damages are available under the

12  UCL.") (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003));

13  *Plakhova v. Hood*, 2017 WL 10592315, at *3 (C.D. Cal. June 20, 2017) ("Moreover,

14  punitive damages, including money damages, are not recoverable under the UCL —

15  Bus. & Prof. Code §§ 17200, et seq., permits only restitution and injunctive relief.").

16  Further, because as explained in Section IV. B-D, each of these causes of action fails

17  as a matter of law, Sumida's claim for punitive damages must be dismissed.  Finally,

18  there is simply no conduct alleged in the SAC suggesting that punitive damages are

19  appropriate in this case.  Volvo, after being tagged in the subject photographs did

20  exactly what the Plaintiffs seemingly wanted Volvo to do—they re-shared the subject

21  photographs on social media.  Even if doing so somehow violated Sumida's publicity

22  rights, there are no facts that would support an award of punitive or exemplary

23  damages.

## V.   CONCLUSION

25         For the foregoing reasons, the Defendant respectfully submits that the SAC

26  should be dismissed in its entirety with prejudice.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 24 –

DATED:  August 10, 2020                    REED SMITH LLP


By: _/s/ Harrison J. Dossick_____
       Harrison J. Dossick
       Jonathan D. Gershon
       Attorneys for Defendant
       Volvo Car USA LLC

REED SMITH LLP

A limited liability partnership formed in the State of Delaware