Harrison J. Dossick (SBN 128319)
Email: hdossick@reedsmith.com
Jonathan D. Gershon (SBN 306979)
Email: jgershon@reedsmith.com
Reed Smith LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067-6078
Telephone: +1 310 734 5200
Facsimile: +1 310 734 5299

Attorneys for Defendant
Volvo Car USA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK SCHROEDER, an Individual; and BRITNI SUMIDA, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>VOLVO GROUP NORTH AMERICA, LLC, a Delaware limited liability company; and VOLVO CAR USA LLC, a Delaware limited liability company<br><br>Defendants. | No.: 2:20-cv-05127-VAP (PVC)<br><br>**REPLY IN SUPPORT OF DEFENDANT VOLVO CAR USA LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:       September 14, 2020<br>Time:       2:00 p.m.<br>Place:      Courtroom 8A_<br><br>Compl. Filed:  June 9, 2020<br>FAC Filed:     June 29, 2020<br>SAC Filed:     July 28, 2020<br><br>Honorable Virginia A. Phillips<br><br>[Reply in Support of Request for Judicial Notice and Supplemental Declaration of Harrison J. Dossick filed concurrently] |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................1

II. ARGUMENT ................................................................................................2

    A. The Court May Dismiss Schroeder's Copyright Claim Pursuant to FRCP 12(b)(6). ..........................................................................2

        1. Schroeder Granted Volvo a License and Instagram Granted Volvo a Sub-License to Re-Share the Instagram Photographs. ..........................................................................3

        2. Schroeder Effectively Concedes Volvo's Implied Non-Exclusive Use License. ..........................................................................6

        3. Volvo Was Authorized to Post Schroeder's Photos on Pinterest ..........................................................................6

    B. Sumida's "Publicity" Claims Fail as a Matter of Law .............................7

        1. Sumida's "Publicity" Claims are Preempted. ..................................7

        2. Sumida's Publicity Claims Also Fail Because She Consented to the Use of Her "Likeness" ..........................................................................9

        3. Sumida's Statutory Publicity Claims Also Fail Because Volvo Did not Have Knowledge of Sumida's Alleged Lack of Consent ..........................................................................10

        4. Sumida's Publicity Claim Fails Because Her Likeness Cannot be Identified and/or Was Incidental ...............................10

    C. Sumida's "False Endorsement" Claims Fail as a Matter of Law ...........11

        1. Sumida's Lanham Act and State Law UCL Claims are Preempted. ..........................................................................11

        2. Sumida's Lanham Act Claim Fails Because Volvo did not Suggest Sumida Endorsed Volvo's Cars. ...............................11

III. CONCLUSION ..........................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aligo v. Time-Life Books, Inc.*,
   1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ............................................................ 11

*Basil v. New Razor & Tie Enterprises, LLC*,
   2018 WL 3869480 (C.D. Cal. Feb. 14, 2018) .......................................................... 11

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ................................................................................... 11

*Bondar v. LASplash Cosmetics*,
   2012 WL 6150859 (S.D.N.Y. Dec. 11, 2012) .......................................................... 12

*Cairns v. Franklin Mint Co.*,
   107 F. Supp. 2d 1212 (C.D. Cal. 2000) ................................................................... 11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ................................................................................................... 11

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ..................................................................................... 6

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3rd Cir. 2008) ................................................................................. 12

*Fleet v. CBS, Inc.*,
   50 Cal.App.4th 1191 (1996) (*Id.* at 1014-1016) ....................................................... 8

*Gardner v. Nike, Inc.*,
   279 F.3d 774 (9th Cir. 2002) ..................................................................................... 6

*Gasery v. Kalakuta Sunrise, LLC*,
   422 F. Supp. 3d 807 (S.D.N.Y. 2019) ....................................................................... 6

*Interscope Records v. Time Warner, Inc.*,
   2010 WL 11505708 (C.D. Cal. June 28, 2010) ......................................................... 6

*In re Jackson*,
   2020 WL 4810706 (2nd Cir. Aug. 19, 2020) ......................................................... 8, 9

*Jones v. Corbis Corp.*,
 815 F. Supp. 2d 1108 (C.D. Cal. 2011) ............................................................... 9, 10

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
 617 F.3d 1146 (9th Cir. 2010) ..................................................................................... 7

*Laws v. Sony Music Entm't, Inc.*,
 448 F.3d 1134 (9th Cir. 2006) ..................................................................................... 8

*Maloney v. T3Media, Inc.*,
 853 F.3d 1004 (9th Cir. 2017) ..................................................................................... 8

*McGucken v. Newsweek LLC*,
 2020 WL 2836427 (S.D.N.Y. June 1, 2020) .......................................................... 4, 5

*Midler v. Ford Motor Co.*,
 849 F.2d 460 (9th Cir. 1988) ..................................................................................... 12

*Newcombe v. Adolf Coors Co.*,
 157 F.3d 686 (9th Cir. 1998) ................................................................................. 9, 10

*Premier Tracks, LLC v. Fox Broad. Co.*,
 2012 WL 13012714 (C.D. Cal. Dec. 18, 2012, Dolly M. Gee, Judge) ...................... 3

*Sinclair v. Ziff Davis, LLC*,
 2020 WL 3450136 (S.D.N.Y. June 24, 2020) ......................................................... 4, 5

*Sinclair* v. *Ziff Davis, LLC*,
 No. 18 Civ. 790 (KMW), 2020 WL 1847841 (S.D.N.Y. Apr. 13,
 2020) ........................................................................................................................... 5

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
 845 F.3d 1246 (9th Cir. 2017) ................................................................................... 11

*Stavrinides v. Vin Di Bona*,
 2018 WL 1311440 (C.D. Cal. Mar. 12, 2018, Christina A. Snyder,
 Judge) .......................................................................................................................... 2

*Sybersound Records, Inc. v. UAV Corp.*,
 2006 WL 8434619 (C.D. Cal. Jan. 6, 2006, John F. Walter, Judge) ......................... 3

*Sybersound Records, Inc. v. UAV Corp.*,
 517 F.3d 1137 (9th Cir. 2008) ................................................................................... 11

– iii –

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) .................................................................................. 12

*Wendt v. Host Int'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ..................................................................................... 12

*White v. Samsung Elecs. Am., Inc.*
    971 F.2d 1395 (9th Cir. 1992) ................................................................................... 12

*ZilYen, Inc. v. Rubber Mfrs. Ass'n*,
    935 F. Supp. 2d 211 (D.D.C. 2013) ............................................................................ 6

## I. INTRODUCTION

The arguments in Plaintiffs' Opposition are predicated on erroneous and exaggerated characterizations of Volvo's Motion. Volvo does not claim the fruits of the artists' labors are free for the picking. Volvo has the utmost respect for the creative rights of all artists. It always has, and always will, compensate artists for work used in its advertising and marketing campaigns. But, in this instance, Volvo did not use Schroeder's photographs or Sumida's image in any paid advertising campaigns. Volvo simply re-shared photos on its own social media platforms after being tagged by Schroeder, and immediately deleted them when requested.

More to the point, Schroeder is not some casual Instagram user who posted a few spontaneous snapshots of a friend with a car in the background. Schroeder creates highly stylized images of sports cars and luxury automobiles for a living. Last April, Schroeder teamed up with a company that produces car commercials (Porch House) and a professional model (Sumida) to create professional-quality still and video images of Volvo's recently debuted, completely re-designed S60 sedan. Schroeder (and Sumida) then authorized Porch House to publish and publicly represent (falsely) that his photos "with model Britni Sumida for Volvo Cars" were part of a "Social Campaign for Volvo Cars." Schroeder, Sumida and Porch House were well aware that Volvo never commissioned them to create, publish or use images of its newest vehicle in this manner. They just did what they did to further their own professional goals, without regard for Volvo's rights. Months later, when Volvo re-shared these same images (of its own vehicle), Schroeder and Sumida added insult to injury and tried to shake Volvo down for money. When that didn't succeed, they filed this lawsuit, leaving Volvo with no choice but to defend and enforce its rights.

Volvo also does not advocate the abolition of Instagram. Content sharing platforms like Instagram simply could not exist if, as Schroeder posits, using core

features to re-post shared content constitutes copyright infringement.[1]  Instagram's terms eliminate this risk, not by stripping artists like Schroeder of their intellectual property rights, but rather by granting others the right to re-share content that artists choose to *publicly* share on Instagram's platform.  Instagram's solution is not unfair. Artists can preserve their right to bring infringement actions either by choosing Instagram's privacy settings or by choosing not to use Instagram to share their copyright-protected works.   Schroeder chose to share his photographs on his public Instagram account and now must accept the consequences.

The same goes for Sumida.  She allowed Schroeder and Porch House to depict her photographic image in an unauthorized "social campaign for Volvo Cars" that falsely promoted her publicly as a "model Britni Sumida for Volvo Cars."  Having made that choice, she cannot now claim that her "publicity" rights were violated merely because Volvo re-shared those very same images.  Similarly, by choosing to pose with the Volvo S60 in a day-long professional photo shoot, she cannot claim that *Volvo* falsely implied that she endorsed one of its products.

II.   **ARGUMENT**

   A.   **The Court May Dismiss Schroeder's Copyright Claim Pursuant to FRCP 12(b)(6).**

Schroeder acknowledges, as he must, that the Court may properly dismiss his copyright infringement claim if it determines that the allegations in the SAC and judicially noticeable materials establish the existence of a license.  Opp. at 5:17-27.  Indeed, courts in this district have granted FRCP 12(b)(6) motions in copyright actions where the alleged infringer held a license to use the copyrighted material.  *See e.g. Stavrinides v. Vin Di Bona*, 2018 WL 1311440, at *4 (C.D. Cal. Mar. 12, 2018,

---

[1] The Copyright Act does not distinguish between commercial infringement and personal infringement.  Thus, if Schroeder's view were to prevail, millions of individual Instagram users would unwittingly become the targets of copyright infringement claims simply by using the tools and features that Instagram provides. Such a construct may seem attractive to lawyers who represent content creators, but the impact on Instagram and the federal courts would be devastating.

Christina A. Snyder, Judge) (granting motion to dismiss where plaintiff signed an agreement that unambiguously granted defendants a license to use plaintiff's copyrighted videos).[2] Here, both the IG Terms and Schroeder's independent conduct granted Volvo a license and, thus, Schroeder's copyright infringement claim must be dismissed.

### 1. Schroeder Granted Volvo a License and Instagram Granted Volvo a Sub-License to Re-Share the Instagram Photographs.

Schroeder does not dispute that he is bound by the IG Terms.[3] Nor does Schroeder dispute that, through Instagram's Terms of Use, he granted Instagram a sub-licensable license. Opp at 7:6-7. Instead, Schroeder contends that although Instagram *can* grant sub-licenses, there is nothing to suggest that it actually *did*. *See* Opp. at 7:8-11. Schroeder's argument should be rejected because it ignores the fact that the IG Terms expressly permit users to re-share other's posts <u>in a manner that is consistent with the original poster's privacy settings</u>.[4] Furthermore, Instagram also expressly *permits* a user to share someone else's post to their story if the original poster had a public account and their privacy settings allow re-sharing.[5] Thus, the IG Terms clearly provide that when Schroeder publicly posted the Instagram

---

[2] *See also Sybersound Records, Inc. v. UAV Corp.*, 2006 WL 8434619, at *7 (C.D. Cal. Jan. 6, 2006, John F. Walter, Judge) (granting motion to dismiss where defendant had a license to distribute copyrighted works); *Premier Tracks, LLC v. Fox Broad. Co.*, 2012 WL 13012714, at *5 (C.D. Cal. Dec. 18, 2012, Dolly M. Gee, Judge) (same).

[3] He does, however, appear to question whether he is bound by the *version* of the IG Terms in effect in April 2019 (when he first posted the Instagram Photographs to his Instagram page) rather than the version in effect when he created his account. Opp. at 6:26-28. Schroeder's attempt to create doubt is a non-starter. Instagram's Terms of Use clearly provide that when Instagram changes its terms, its changes are binding on its users. *See* RJN Ex. 13 ("Updating these Terms").

[4] *See* Motion at 11:7-13; RJN Exh. 14 ("[O]ther Users **may** search for, see, use, or **share any of your User Content that you make publicly available through the Service**" . . . "**Once you have shared User Content or made it public, that User Content may be re-shared by others**.") (Emphasis added.)

[5] *See* RJN Ex. 10 ("You **can** only share **someone's post** from Feed **to your story** if their account is public and they've allowed resharing of their posts… If you have a public account, you can turn off the ability for others to re-share your posts.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Photographs, Instagram granted Volvo a sub-license to re-share the photographs consistent with Schroeder's privacy settings. And, because Schroeder is bound by Instagram's Privacy and Data Policies, by electing to make his account public, Schroeder also granted Volvo (among others) a license to re-share his photographs.

Schroeder responds by claiming the IG Terms do not grant Volvo a license because the Terms of Use provide that it "does not give rights to any third parties." Opp. at 7:20-22. This argument misinterprets the IG Terms. Volvo is an Instagram user and therefore is not a "Third Party" as that term is used in Instagram's Terms of Use.[6] More importantly, this "Third Party restriction" only appears in the Instagram Terms of Use and thus is irrelevant because the sublicense granted to Volvo was derived from Instagram's <u>Data</u> and <u>Privacy</u> Policies, <u>not</u> from the Terms of Use. Schroeder also argues that the IG Terms cannot create a license because Instagram's "Help Page" and "Platform Policy"[7] state that users cannot violate other's intellectual property rights or use content "without permission." Opp. at 7:23-8:7. This argument is circular and nonsensical. Volvo was granted a sub-license to re-share Schroeder's posts in a manner consistent with Schroeder's privacy settings. Volvo's use therefore was *with permission* and did not violate Schroeder's intellectual property rights.

Finally, Schroeder contends that Volvo's Motion should be denied under recent rulings issued in *McGucken v. Newsweek LLC*, 2020 WL 2836427 (S.D.N.Y. June 1, 2020) and *Sinclair v. Ziff Davis, LLC*, 2020 WL 3450136 (S.D.N.Y. June 24, 2020) --

---

[6] Indeed, the only other mention of "third parties" in the Terms of Use suggests this term refers to "third-party partners" rather than other users, and Instagram's Privacy Policy clearly makes a distinction between "third parties" and other users. *See* RJN, Ex. 15 ("If you remove information that you posted to the Service, copies may remain viewable in cached and archived pages of the Service, or if <u>other Users</u> **or** <u>third parties</u> using the Instagram API have copied or saved that information.") (Emphasis added).

[7] Instagram's *Platform Policy* is not at issue here and was not cited by Volvo as the source of its license. In any event, the Platform Policy only applies to the use of Instagram's "Platform," which is defined as a "set of APIs, SDKs, plugins, code, specifications, documentation, technology, and services (such as content) <u>that enable others, including application developers and website operators, to retrieve data from Instagram or provide data to us</u>." The SAC does not, and cannot, allege that Volvo engaged in any such conduct.

two cases currently pending in the Southern District of New York that, on the surface, appear to present similar facts. In actuality, *McGucken* and *Sinclair* are factually inapposite, and Schroeder's citation to interim rulings issued in those matters is misguided. *First*, the question recently considered in *Sinclair* and *McGucken* (i.e., whether Instagram's <u>Platform Policy</u> grants an "API user" a sub-license to <u>embed</u> Instagram content in its website)[8] is materially <u>different</u> than the question presented here (i.e., whether the IG Terms grant Volvo a license and/or a sublicense to re-share Schroeder's photographs in an Instagram story).[9] *Second*, the recent decisions issued in *Sinclair* and *McGucken* did not examine the Instagram <u>Data Policy</u> or the Instagram <u>Privacy Policy</u> at issue here and, therefore, neither court considered whether the plaintiff had *directly* granted other users a license to re-share photos to their stories based on the plaintiff's privacy settings. *Finally*, even if the *Sinclair* and *McGucken* facts were materially similar to those presented here, neither interim ruling would be binding on this Court.

---

[8] "Embedding allows a website coder to incorporate content, such as an image, that is located on a third-party's server, into the coder's website. When an individual visits a website that includes an 'embed code,' the user's internet browser is directed to retrieve the embedded content from the third-party server and display it on the website. As a result of this process, the user sees the embedded content on the website, even though the content is actually hosted on a third-party's server, rather than on the server that hosts the website." *Sinclair* v. *Ziff Davis, LLC*, No. 18 Civ. 790 (KMW), 2020 WL 1847841, at *1 (S.D.N.Y. Apr. 13, 2020) (internal citations omitted). Schroeder does not and cannot allege that Volvo embedded any of his photographs in Volvo's website (or elsewhere.).

[9] The *Sinclair* court wrestled with this question first, ruled in favor of the plaintiff, and dismissed the action pursuant to FRCP 12 (b)(6). When that issue was next addressed in *McGucken*, the court found definitively that Instagram's "Terms of Use unequivocally grant Instagram a license to sublicense Plaintiff's publicly posted content, and the Privacy Policy clearly state that 'other Users may search for, see, use, or share any of your User Content that you make publicly available through' Instagram." *McGucken* at 9. Nevertheless because *McGucken* reasoned that Instagram's Platform Policy language could not definitively be construed to grant a sub-license to embedders, the court denied plaintiff's motion to dismiss and left the question open for adjudication on summary judgment. *Id.*, at 10. After the court in *McGucken* reached its decision, the court in *Sinclair* reconsidered and reversed its earlier ruling. *Sinclair* at 3.

### 2. Schroeder Effectively Concedes Volvo's Implied Non-Exclusive Use License.

Separate and apart from the IG Terms, Schroeder's conduct[10] created an implied license which allowed Volvo to share his photographs. *See* Motion at 13:3-14:11. Schroeder does not seriously dispute the existence of this non-exclusive, implied license. Rather, Schroeder half-heartedly maintains (without citation to supporting authority) that it would be "inappropriate" for the Court to consider this issue in the context of a motion to dismiss. Schroeder is mistaken. Where, as here, the pleaded and judicially noticeable facts establish the elements of an implied-in-fact non-exclusive use license, it is appropriate to grant a motion to dismiss. *See e.g. Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 817 (S.D.N.Y. 2019) (granting motion to dismiss because "[b]ased on the course of conduct between the Parties, the Court finds that Kalakuta created an implied, non-exclusive license of the copyrighted material…"); *ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 935 F. Supp. 2d 211, 222-24 (D.D.C. 2013) (granting motion to dismiss because "that the plaintiff granted the defendant an implied license to use and thus necessarily copy the CD software.").[11]

### 3. Volvo Was Authorized to Post Schroeder's Photos on Pinterest.

The SAC alleges that two of the photographs Volvo posted to its Pinterest page were made available to Volvo through Schroeder's "promotional web page." SAC, ¶ 22. There is no question SAC paragraph 22 refers to Schroeder's Behance.net page.

---

[10] *See Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010) ("'Where the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license.'").

[11] Schroeder also makes the bizarre claim that *Gardner v. Nike, Inc.*, 279 F.3d 774, 781 (9th Cir. 2002) stands for the proposition that an ***implied*** license requires "explicit consent." Opp at 11:19-20. It is hard to imagine any court could reach such a facially oxymoronic conclusion. The *Gardner* court certainly did not. Indeed, the issues in *Gardner* did not concern non-exclusive implied licenses in any sense; rather, the *Gardner* court held that <u>express</u> fully executed written "exclusive licenses are only assignable with the consent of the licensor." Implied-in-fact, non-exclusive licenses do not require the "explicit consent" of the licensor. Such licenses, by their nature, are implied from the licensor's and licensee's conduct. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).

Schroeder does not deny this fact,[12] nor does he dispute that by posting his photographs to Behance, he granted a license for other Behance users to share his photographs. Instead, Schroeder argues that he limited the scope of his license to prohibit the use of his photos in advertising. Opp. at 12:19-20. This argument fails because Schroeder admits in the SAC that Porch House's "use of images and video from Plaintiff's test-shoot" was "<u>authorized</u>." SAC, ¶ 28, n. 2. By authorizing Porch House to commercially use the photographs on its Behance and Instagram pages, and by not preventing Porch House from misrepresenting to the public that the videos and photographs taken during the Super-Bloom Shoot were part of a "social campaign for Volvo Cars," Schroeder is estopped from arguing here that the license he granted through Behance was restricted to non-commercial use.

### B. Sumida's "Publicity" Claims Fail as a Matter of Law

#### 1. Sumida's "Publicity" Claims are Preempted.

Sumida's two "right of publicity" claims are preempted by the Copyright Act because the gravamen of her claims is ***not*** that her "likeness" was used commercially, but rather is that Volvo distributed photographs containing her "likeness" without her authorization. Because Sumida objects to the distribution of the photograph (which unquestionably is the subject of copyright) rather than the content of the image, her claims <u>are</u> preempted.

Sumida tries to distinguish *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1150 (9th Cir. 2010)—the lead preemption case cited by Volvo—by claiming Volvo's use of her image "involves advertising." Opp. at 15:12-13. Sumida's argument, however, is misplaced and based solely on an overly narrow

---

[12] Instead, Schroeder attempts to obscure the truth by playing word games. *See* Opp. at 12:3-4 ("One problem with this argument is that Schroder [sic] never mentions Behance in the SAC.") The problem with Schroeder's ploy, however, is that he affirmatively identified Behance as the source of those photos in the email he sent to Volvo on November 20, 2019. Accordingly, and because the SAC identifies and quotes from this very same email (*see* SAC, ¶ 23), the Court can properly take judicial notice of its contents. *See* Volvo's Reply to Plaintiffs' Opposition to Request for Judicial Notice, Exhibit A.

interpretation of *dicta* from *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1007 (9th Cir. 2017), a subsequent Ninth Circuit decision that also held the alleged right of publicity claims were preempted. In *Maloney*, two former collegiate student athletes claimed a website that stored and licensed photographs owned by the NCAA violated their right of publicity. *Id.* at 1007. The *Maloney* court found that the plaintiffs' publicity rights were preempted because the "Plaintiffs' publicity-right claims and the derivative UCL claim <u>challenge</u> '<u>control of the artistic work itself</u>.'" *Id.* at 1019 (emphasis added). In reaching this decision, the court discussed and approved of *Fleet v. CBS, Inc.*, 50 Cal.App.4th 1191 (1996) (*Id.* at 1014-1016), another decision discussed and relied on by Volvo. *See* Motion at 15:10-20. In fact, the *Maloney court* noted that in *Fleet* "the plaintiffs' right of publicity claim was a question of control over the distribution, display or performance of a movie CBS owned…" *Id.* at 1019 n. 15 (citing *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1142 (9th Cir. 2006)).

Moreover, the *Maloney* Court cited to *Jules Jordan* <u>with approval</u> and explained that the Ninth Circuit found in favor of preemption in that case because "the actor was objecting to the <u>unauthorized distribution</u> and republication of a copyrighted work, not the exploitation of his likeness on an <u>unrelated product or in advertising</u>." *Id.* at 1016 (emphasis added). The reference to "unrelated products or in advertising" therein is dispositive because, as with Sumida, the *Jules Jordan* defendant used the videos in a manner consistent with the consent given by the plaintiff. *Jules Jordan* does not, as Sumida tries to argue, stand for the proposition that uses involving advertising cannot be preempted. Indeed, as the *Maloney* court explained, a publicity-right claim may not be preempted "when a likeness is used **non-consensually** on merchandise or in advertising." *Id.* (emphasis added).[13]

---

[13] This point was very recently reiterated and applied in *In re Jackson*, 2020 WL 4810706, at *1 (2nd Cir. Aug. 19, 2020), which affirmed the district court's order granting dismissal of the plaintiff's advertising-related right of publicity claims. In *Jackson,* although actor/musical artist 50 Cent alleged that his name and voice was used in advertising, the Second Circuit held his claim was preempted because, "the predominant focus of [the] claim is [the defendant's] <u>unauthorized use</u> of a copyrighted sound recording" and thus "constitute[d] little more than a thinly

Thus, far from saving Sumida from dismissal, *Maloney* confirms that her publicity claims are preempted. Just as in *Jules Jordan* and *Fleet*, although Sumida <u>authorized</u> others to capture and use her photographic image commercially (albeit in advertising that infringed Volvo's intellectual property rights),[14] she objects to Volvo's <u>distribution</u> of the very same photographs. Thus, the gravamen of Sumida's claim is *not* that her photographic image was used commercially in a purported Volvo advertisement, but rather that her photographic image was distributed <u>by Volvo</u>. This objection to the distributor, as opposed to the content, is precisely the reason why the Ninth Circuit found the plaintiffs' publicity claims were preempted in *Jules Jordan* and *Maloney*.

### 2. Sumida's Publicity Claims Also Fail Because She Consented to the Use of Her "Likeness"

Common law misappropriation claims and statutory misappropriation claims under Cal. Civ. Code §3344 require the plaintiff to establish that she did not consent to the use of her image. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998); *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011). Sumida consented to the commercial distribution of her photographic image. SAC ¶28, n. 2. For that reason alone, her common law and statutory misappropriation claims must be dismissed.

Sumida does not dispute that she authorized Schroeder and Porch House to publish her image. Instead, she argues that "consent to use of identity for a particular use cannot be stretched to include a consent for other and different uses." Opp. at

---

disguised effort to <u>exert control over an unauthorized production</u> of a sample of his work." *Id.* at *7 (emphasis added).

[14] As explained in the Motion, Sumida voluntarily posed in and with the Volvo S60 for a professional photo-shoot. Motion at 16:17-17:4. Sumida also admits that she authorized Porch House (a professional automobile advertising company) to publish the resulting images of her (*see* SAC, ¶ 28, n. 2), tag her in the posts, and (falsely) claim that the images depicted "model Britni Sumida *for Volvo Cars*" (emphasis added) – thus (falsely) implying that Volvo had hired Sumida to appear in an advertisement for the Volvo S60. *See* RJN, Exh. 2.

23:4-5.  Sumida mischaracterizes the scope of her consent.  Sumida authorized Porch House to publish her photographic image (SAC ¶ 28, n. 2).  In doing so, Porch House (falsely) represented that the published photographs were part of a "social campaign for Volvo" "with model Britni Sumida for Volvo Cars."  As stated above, Sumida's actions have consequences.  Among others, her common law and statutory publicity claims fail as a matter of law.

### 3. Sumida's Statutory Publicity Claims Also Fail Because Volvo Did not Have Knowledge of Sumida's Alleged Lack of Consent

Cal. Civ. Code section 3344 requires a plaintiff to "allege a knowing use [without consent] by the defendant as well as a direct connection between the alleged use and the commercial purpose.'"  *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011) (citing *Newcombe,* 157 F.3d at 692).  Here, even if Sumida did not give actual consent to the use of her photographic image in a supposed "social campaign for Volvo" (she clearly did), Sumida does not, and cannot, allege that Volvo *knew* she had not consented to such use.  Indeed, the fact that Schroeder previously offered to license her photographic images for use on Volvo's website conveyed the exact opposite impression – *i.e.*, that Sumida gave Schroeder her permission to have her photograph used in an advertisement for the Volvo S60.  *See* SAC, ¶ 19.  None of the other objective facts suggest otherwise.  Her misappropriation claim under Cal. Civ. Code section 3344 therefore fails as a matter of law, as does her related prayer for attorneys' fees and punitive damages.

### 4. Sumida's Publicity Claim Fails Because Her Likeness Cannot be Identified and/or Was Incidental

Sumida concedes that her likeness is only "readily identifiable" in "most" but not all, of the photographs at issue.  Opp. at 24:22.  To the extent she is not identifiable or her likeness is incidental, her publicity claims fail.  *See Newcombe*, 157 F.3d at 692 (noting that to state a claim for misappropriation, a plaintiff's likeness must be "readily identifiable.").  And, contrary to Sumida's assertion, the Court can

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

reach this conclusion at this stage. *See e.g. Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994) (granting motion to dismiss based on the incidental use doctrine); *Bogie v. Rosenberg*, 705 F.3d 603, 616 (7th Cir. 2013) (affirming dismissal, with prejudice, based on the incidental use exception).

### C. Sumida's "False Endorsement" Claims Fail as a Matter of Law

#### 1. Sumida's Lanham Act and State Law UCL Claims are Preempted.

Sumida claims that in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the U.S. Supreme Court held that "reverse passing off" Lanham Act claims are preempted by the Copyright Act. Volvo never suggested otherwise but, contrary to Sumida's contention, *Dastar* did **not** hold that "all other Lanham Act claims are not preempted." Opp. at 16:20. Indeed, as demonstrated in Volvo's Motion, after *Dastar* was decided, courts continued to find that non-reverse passing off-based Lanham Act claims are preempted. *See e.g. Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (finding section 43(a)(1)(B) Lanham Act false advertising claim was preempted in order "to avoid overlap between the Lanham and Copyright Acts."); *Basil v. New Razor & Tie Enterprises, LLC*, 2018 WL 3869480, at *3 (C.D. Cal. Feb. 14, 2018) (finding that a false endorsement/association Lanham Act claim was preempted where the complaint alleged "nothing more than an infringement of rights that are equivalent to those enumerated in the Copyright Act."); *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) ("When the claim is more accurately conceived of as attacking unauthorized copying, *Dastar* requires us to avoid recognizing a "species of mutant copyright law" by making such claims cognizable under the Lanham Act.").

#### 2. Sumida's Lanham Act Claim Fails Because Volvo did not Suggest Sumida Endorsed Volvo's Cars.

Sumida's "false endorsement" claims also fail for want of allegations suggesting Sumida endorsed Volvo's products. *See Cairns v. Franklin Mint Co.*, 107

F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) ("[N]ot all uses of a [person's] image are actionable under § 1125(a). Only uses which suggest sponsorship or approval are prohibited."). Sharing photographs, without more, does not imply an endorsement, and contrary to Sumida's assertion, the Court may dismiss her claims based on these insufficient allegations. *See Bondar v. LASplash Cosmetics*, 2012 WL 6150859, at *7 (S.D.N.Y. Dec. 11, 2012) (granting a motion for judgment on the pleadings because "the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was "endorsing" a product, as opposed to lending her image to a company for a fee.").

Sumida's false endorsement claims also fail because, even if the photographs somehow created likelihood of confusion as to her endorsement, any such "confusion" was caused by the *content* of the photographs themselves, not by any actions taken by Volvo. Tellingly, Sumida does not cite to a single case where a plaintiff successfully alleged a false endorsement claim after <u>voluntarily</u> posing with the product in a photo shoot.[15]

### III. CONCLUSION

For the foregoing reasons, the Defendant respectfully submits that the SAC should be dismissed in its entirety with prejudice.

DATED: August 31, 2020      REED SMITH LLP

By: __/s/ Harrison J. Dossick_____
    Harrison J. Dossick
    Jonathan D. Gershon
    Attorneys for Defendant
    Volvo Car USA LLC

---

[15] The works at issue in *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809 (9th Cir. 1997), *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988), *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097 (9th Cir. 1992) and *White v. Samsung Elecs. Am., Inc.* 971 F.2d 1395, 1396 (9th Cir. 1992) all involved impersonations of the plaintiffs and, in *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3rd Cir. 2008), the defendant used audio splicing to imply the plaintiff promoted a new product.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware