UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | LACV 20-05127-VAP (PVCx) | Date | September 3, 2020 |
|---|---|---|---|
| Title | *Jack Schroeder and Britni Sumida v. Volvo Group North America, LLC and Volvo Car USA LLC* | | |

Present: The Honorable VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT JUDGE

| Christine Chung | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s): Attorney(s) Present for Defendant(s):

None Present                                           None Present

**Proceedings:** MINUTE ORDER DENYING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (IN CHAMBERS)

Before the Court is Defendant Volvo Car USA LLC's ("Defendant") "Motion to Dismiss Plaintiffs' Second Amended Complaint" ("Motion"), filed on August 10, 2020. Having considered the papers filed in support of, and in opposition to, the Motion, the Court finds this matter appropriate for resolution without oral argument pursuant to Local Rule 7-15 and hereby VACATES the hearing set on September 14, 2020 at 2:00 p.m. For the following reasons, the Court DENIES the Motion.

**I. Procedural History**

On June 9, 2020, Plaintiffs Jack Schroeder ("Schroeder") and Britni Sumida ("Sumida") (together "Plaintiffs") filed a Complaint naming Volvo Group North America, LLC and Volvo Car USA LLC as Defendants and bringing six claims, for copyright infringement, unfair competition under the Lanham Act, violation of California Business and Professions Code § 17200, unfair competition pursuant to California common law, violation of California Civil Code § 3344, and misappropriation of likeness under California common law. (See Compl.)

On June 29, 2020, Plaintiffs filed a First Amended Complaint ("FAC"). The FAC identified the same Defendants and brought the same claims as the original Complaint, but it added factual allegations. (See FAC.)

On July 20, 2020, Plaintiffs voluntarily dismissed Defendant Volvo Group North America, LLC without prejudice.

On July 28, 2020, Plaintiffs filed a Second Amended Complaint ("SAC"). The SAC contains the same claims as those identified in the original Complaint and the FAC, but it removes Volvo Group North America, LLC as a party. (See SAC.) In the SAC, Schroeder brings the first claim for copyright infringement and Sumida brings the remaining claims, for unfair competition under the Lanham Act, violation of California Business and Professions Code § 17200, and California unfair competition common law, violation of California Civil Code § 3344, and misappropriation of likeness under California common law. (Id.)

Defendant filed the instant Motion on August 10, 2020. Plaintiffs filed Opposition to the Motion on August 24, 2020. Defendant filed a Reply on August 31, 2020.

Plaintiffs filed a request for leave to file a sur-reply on September 2, 2020. Plaintiffs seek leave to address new arguments and factual assertions raised in Defendant's Reply. The Court has considered the request but has determined a sur-reply is not necessary to address these matters because they are not relevant to the Court's analysis here. Accordingly, the Court DENIES the request.

## II.     Factual Allegations

In the SAC, Plaintiffs allege Schroeder is "a renowned and sought after automotive and lifestyle photographer" and Sumida is "a highly sought after model." (SAC ¶¶ 1-2, 15.) In April 2019, Schroeder organized a photo shoot "to take advantage of the 'super bloom' of wildflowers in the high desert of Southern California" and featured a Volvo S60 and Sumida. (Id. ¶ 2, 16.) After the photo shoot, Schroeder posted a few of the photographs on his Instagram account on April 23, 2019. (Id. ¶ 4.) Volvo commented on his photos on Instagram and requested "permission to use the images in its advertising." (Id. ¶¶ 4, 18 ("Volvo left the following public comment on Schroeder's Instagram: We love your post and would like to share it! To accept comment with #yesvolvousa you can read T&C's at http://live.storystreatm.it/Volvo-car-us/").)

Schroeder responded to Volvo by email and declined Volvo's request because he "does not license his work for free;" he "offered to negotiate a license" and provided a link to his personal website "to entice [Volvo] to purchase his work." (Id. ¶¶ 5, 19.) Volvo never responded to Schroeder's email. (Id. ¶¶ 6, 19.)

"The copyright for [Schroeder's photographs] was registered with the United States Copyright Office, effective May 25, 2020 (United States Copyright Registration VA0002204816)." (Id. ¶ 16.)

On November 19, 2019, without Schroeder's permission, Defendant ran a "global advertising campaign that inexplicably consisted solely of the nine photographs that Schroeder had posted to his Instagram account, as well as two photographs that he posted to his personal website . . ., including images featuring [] Sumida." (Id. ¶¶ 6, 20.) Defendant published Schroeder's photographs in an Instagram "story" and on its Pinterest page. (Id. ¶¶ 20-21.) Defendant's advertising campaign "directed viewers to a dedicated Volvo web page . . . [which] was created specifically to receive consumers who clicked on Schroeder's photographs." (Id. ¶¶ 6, 20.) Defendant's Instagram "story" that published Schroeder's photographs credited Schroeder as the photographer but Defendant's Pinterest page did not. (Id. ¶¶ 21, 31.)

On November 20, 2019 and again on November 22, 2019, Schroeder emailed Defendant to explain its use of his photographs was without his authorization and requested that they be removed. (Id. ¶¶ 23, 24.) Defendant responded to Schroeder's second email and said his photographs "would not be used going forward." (Id. at ¶ 24.) Defendant removed Schroeder's photographs from its Instagram posting, but they remained on its Pinterest pages as of July 23, 2020. (Id. ¶¶ 21, 25.)

Plaintiffs allege Defendant's unauthorized use of Schroeder's photographs was "particularly damaging because [] Sumida had been hired to star in an ad campaign for a different major car company, and her contract contained a provision preventing her from working for other auto manufacturers." (Id. ¶ 7.)

### III.   Request for Judicial Notice

In support of the Motion, Defendant submits a Request for Judicial Notice ("RJN") attaching twenty-one exhibits. Defendant moves the Court to take judicial notice of the following: (1) a screenshot of Porch House's website[1]; (2) a screenshot of Porch House's Behance website; (3) a screenshot of Porch House's Instagram post dated July 8, 2019; (4) a screenshot of Schroeder's Behance website; (5) a screenshot of Facebook's website; (6) a screenshot of Instagram's website titled "What is Instagram?"; (7) a screenshot of Instagram's website titled "How do I post a photo on Instagram?"; (8) a screenshot of Instagram's website titled "How do I set up my Instagram account to private so that only approved followers can see what I share?"; (9) a screenshot of Instagram's website titled "What posts do I see in my Instagram feed?"; (10) screenshots of Instagram's "Stories" help website; (11) screenshots of Instagram's "tagging and mentions" help website; (12) a screenshot of Instagram's "sign up" website; (13) a screenshot of Instagram's "terms of service" website dated April 19, 2019; (14) screenshots of Instagram's "privacy policy" dated April 19, 2019 and November 18, 2018; (15) screenshot of Instagram's "data policy" dated April 19, 2019; (16) screenshot of Behance's website titled "Guide: Intro to Behance;" (17) a screenshot of Behance's website titled "additional terms of use;" (18) a screenshot of Behance's website titled "Guide: Share Your Work with Social Media;" (19) a screenshot of Pinterest's "terms of service" website; (20) a screenshot of Pinterest's "copyright infringement" website; and (21) a screenshot of Pinterest's website titled "Customize your profile cover." (See RJN.) Defendant argues these twenty-one exhibits should be noticed judicially because they are taken from publicly available websites and are either referred to in the SAC or relate to the allegations in the SAC. (Id.; see also Reply in Support of RJN.)

---

[1] In the SAC, Porch House is alleged to be "a small mom & pop production company that Schroeder has worked with." (SAC ¶ 27.) The SAC includes an allegation that, after Plaintiffs' counsel sent a cease and desist letter to Defendant, Defendant threatened to sue Porch House "for creating a 20 second video using footage taken during Plaintiffs' April 2019 test shoot." (Id.) Plaintiffs allege Defendant's letter to Porch House "was nothing more than a transparent attempt to bully Schroeder and Sumida into dropping their claims." (Id. ¶ 28.)

Plaintiffs oppose the RJN.  (See Obj. to RJN.)  Plaintiffs argue Defendant's twenty-one exhibits are not the proper subject of judicial notice and even if they were, the Court could only take judicial notice of their existence, not the truth of their contents.  (Id.)  In addition, Plaintiffs object specifically to: Exhibits 1-3 because any document relating to Porch House is not incorporated in the SAC; and Exhibits 2, 4, 16-18 because any document relating to Behance.com are not incorporated or even mentioned in the SAC.  (Id.)

A court may properly take judicial notice of: (1) material which is included as part of the complaint or relied upon by the complaint; and (2) matters in the public record.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  A court may take judicial notice of a public record not for the truth of the facts recited in the document, but for the existence of the matters therein that cannot reasonably be questioned.  See Lee, 250 F.3d at 689; Fed. R. Evid. 201.  The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).  The Court also may take judicial notice of material incorporated by reference into the Complaint.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); Intri-Plex Technologies, Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).  Documents are properly incorporated into the complaint by reference "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."  Coto Settlement, 593 F.3d at 1038; see also United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011).

The Court has reviewed the SAC and considered the parties' arguments.  The SAC contains no material allegations about the contents of Porch House's Instagram or Behance websites, Schroeder's Behance website, or Instagram, Pinterest, or Behance's terms of service.  (See SAC.)  Moreover, the SAC attaches no documents although it imbeds several of Schroeder's photographs throughout the body of the SAC.  (Id.)

If Defendant had moved the Court to take judicial notice of, for example, the photographs at issue in this case that Schroeder posted on his Instagram account or screenshots from Schroeder's Instagram account, the Court would likely grant that request, as these matters arguably were incorporated by reference in the SAC's allegations.  See, e.g., Wright v. Buzzfeed, Inc., No. 2:18-cv-02187-CAS (AFMx), 2018 WL 2670642, at *1 fn.1 (C.D. Cal. June 4, 2018) (taking judicial notice of eight photographs posted on the plaintiff's Instagram account); Young v. Greystar Real Estate Partners, LLC, No. 3:18-cv-02149-BEN MSB, 2019 WL 4169889, at *2 (S.D. Cal. Sept. 3, 2019) (taking judicial notice of Instagram and Facebook posts because the complaint specifically described the posts).  Defendant, however, moves the Court to take judicial notice of screenshots from various websites that are not incorporated by reference or relied upon in the SAC and which Plaintiffs argue strongly are not relevant to the Court's analysis under Rule 12(b)(6).  (See SAC; Opp'n.)  Moreover, the parties dispute which version of the various policies posted on the Instagram, Pinterest, and Behance websites controlled at the time Schroeder posted the subject photographs and when Defendant allegedly used the photographs without authorization.  (See Mot.; Opp'n; Reply.)  The parties also dispute the meaning and import of these policies.  (Id.)  Although Defendant is correct that, in general,

courts may take judicial notice of websites (see Reply to RJN at 1), in this case, the Court agrees with Plaintiffs' position. See, e.g., Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1025 (C.D. Cal. 2015) (finding blog post and internet article could not be judicially noticed or considered under the incorporation by reference doctrine).

Throughout the Motion, Defendant relies on the contents of Exhibits 1 through 21 to the RJN for the truth of the matters asserted, to attack the SAC on the merits. (See Mot.) Even if Rule 201 permitted it, the Court would only able to take judicial notice of the existence of the screenshots from these websites, not the truth of the matters asserted therein. See Lee, 250 F.3d at 689; Fed. R. Evid. 201. In any event, as these exhibits have not been incorporated by reference in the SAC and are not matters of public record whose relevance is undisputed between the parties, the Court concludes Defendant's exhibits are outside the scope of the matters permitted to be noticed judicially pursuant to Federal Rule of Evidence 201.

Although these exhibits likely are relevant to Defendant's anticipated affirmative defenses, the Court is unable to take judicial notice of them when evaluating whether Plaintiffs' claims set forth in the SAC survive review under Rule 12(b)(6). Moreover, although the Court agrees with Defendant that it may take judicial notice of documents that are relevant to a defense, Defendant has not yet answered the SAC and has not yet raised any defenses.

Based on Defendant's briefing, it is clear at least Exhibits 5 through 21 would be used to support Defendant's likely defense to Plaintiffs' copyright infringement claim, i.e., Defendant had a license to use the subject photographs. As explained supra, the Court is unable to take judicial notice of these exhibits. Related to this issue, in its Reply, Defendant cites to three cases in support of its argument that the Court has the power to dismiss a claim for copyright infringement on the basis that the alleged infringer had a license to use the copyrighted material. (Reply at 2-3, n.2 (citing Stravrinides v. Vin Di Bona, No. 2:18-cv-00314-CAS (JPRx), 2018 WL 1311440, at *4 (C.D. Cal. Mar. 12, 2018), Sybersound Records, Inc. v. UAV Corp., No. CV 05-5861-JFW (FMOx), 2006 WL 8434619, at *7 (C.D. Cal. Jan. 1, 2006), and Premier Tracks, LLC v. Fox Broadcasting Co., No. 12-CV-01615 DMG (PJWx), 2012 WL 13012714, at *5 (C.D. Cal. Dec. 18, 2012)).) To the extent Defendant relies upon these cases to convince the Court it can grant the Motion and take judicial notice of its proffered exhibits, the Court concludes none of these cases requires such a result here.

In Stavrinides, the court considered exhibits attached to, and incorporated by reference in, the complaint to determine the plaintiff had granted the defendant "an exclusive license to freely use and exploit the [copyrighted material] in any manner." Stravrinides, 2018 WL 1311440, at *3-4. There, the Court considered an agreement of which it could take judicial notice to reach this conclusion and dismissed the plaintiff's copyright infringement claim. By contrast, in this case, the SAC attaches no such agreements of which the Court could take judicial notice to evaluate whether a license was issued to Defendant.

Likewise, the other two cases cited by Defendant provide no assistance here. In Sybersound Records, Inc., the court concluded the plaintiff failed to state a claim for copyright infringement because the allegations in the amended complaint acknowledged that the defendant had received a license to use the copyrighted work from one of the co-owners of the copyright.

Sybersound Records, Inc., 2006 WL 8434619 at *6-7. Here, the SAC contains no allegations to show Defendant obtained a license to use the subject photographs. Next, in Premier Tracks, LLC, the court concluded the plaintiff failed to state a claim for copyright infringement because the defendants had demonstrated, through a stock transfer, they were the rightful owners of a license to use the plaintiff's copyrighted material. Premier Tracks, LLC, 2012 WL 13012714 at *3-5. In reaching this conclusion, the court considered the terms of various agreements attached to, and incorporated by reference in, the complaint, as well as applicable California law. Id. In this case, however, as stated supra, Plaintiffs did not attach any agreement to the SAC that the Court could interpret to determine whether Plaintiffs granted Defendant a license.

Although a court may find it appropriate to dismiss a complaint pursuant to Rule 12(b)(6) "where the court can discern from the face of the pleading that an affirmative defense applies as a matter of law," Yeager v. Cingular Wireless, LLC, 627 F. Supp. 2d 1170, 1177 (E.D. Cal. 2008), it would be "highly unusual for a [c]ourt to 'dismiss' a complaint on 12(b)(6) grounds based on [a defendant] having proven an affirmative defense," Designer Skin, LLC v. S & L Vitamins, Inc., CV 05-3699, 2007 WL 84147, at *2 (D. Ariz. March 19, 2007). The Court is unable to do so here, as discussed infra, given Defendant's proffered exhibits are outside the scope of the Court's review in considering the Motion and are not the appropriate subject of judicial notice. The Court rejects Defendant's arguments and concludes it may not take judicial notice of Defendant's 21 Exhibits to consider its anticipated affirmative defenses when evaluating the SAC pursuant to Rule 12(b)(6). If the Court was to consider the 21 Exhibits attached to the RJN in ruling on the instant Motion, the Court would be required to convert the Motion into one seeking summary judgment. See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). The Court declines do to so at this early stage of the litigation.

For the foregoing reasons, the Court DENIES the RJN.

**IV.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A motion to dismiss can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true and construe them in the light most favorable to the nonmoving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of the Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

To survive a motion to dismiss, a plaintiff must allege facts that state a claim for relief that is plausible, not merely conceivable. Twombly, 550 U.S. at 556, 570. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Then, for all well-pled factual allegations, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (applying Iqbal's two-step analysis).

A complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." Id.

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

**V.     Discussion**

In the Motion, Defendant argues each of the claims in the SAC fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). As to Plaintiffs' copyright claim, Defendant contends Instagram's terms of service make clear it "had a non-exclusive license to re-post the Instagram photographs." (See Mot. 9-13.) Further, according to Defendant, Plaintiffs' state law claims are preempted by the Copyright Act., the Lanham Act claim fails because Defendant "did not suggest that Sumida endorsed Volvo cars" and the claim for misappropriation fails because Sumida "gave consent and all uses were incidental." (Id. at 14-22.) Finally, Defendant argues Sumida is not entitled to attorneys' fees or punitive damages. (Id. at 23-24.)

In Opposition, Plaintiffs argue their claims meet the Rule 12(b)(6) standard and Defendant improperly relies on facts outside the SAC. (See Opp'n.) According to Plaintiffs, Schroeder did not grant Volvo a license to use his photographs personally or pursuant to Instagram's terms of service and Sumida's state law claims are not preempted and are well-pled. (See Opp'n at 6-24.) In addition, Plaintiffs contend Sumida is entitled to attorneys' fees and punitive damages pursuant to Defendant's alleged violation of California Civil Code § 3344 and her claims under common law. (Id. at 25.)

Preliminarily, given the Court's ruling on Defendant's RJN, supra, the issues raised in the Motion have been narrowed. Moreover, the Court notes Defendant makes several arguments throughout the Motion and the Reply regarding the merits of Plaintiffs' claims and Defendant

raises many factual issues that are not alleged in the SAC.  (See Mot.; Reply.)  Defendant brought this Motion pursuant to Rule 12(b)(6) and did not file a motion for judgment on the pleadings under Rule 12(c) or a motion for summary judgment under Rule 56.  The Court only addresses those matters that are relevant to the Rule 12(b)(6) analysis.

### A. Claim 1: Copyright Infringement

Defendant argues Schroeder's claim for copyright infringement fails because Defendant had a non-exclusive license to use the subject photographs.  (See Mot. at 9-13.)  As the matter of whether Defendant had a license to use Schroeder's photographs falls outside of the allegations of the SAC and are not facts of which the Court has taken judicial notice, the Court need not address this argument.  In any event, the Court will evaluate whether Plaintiffs state a claim for copyright infringement.

United States Copyright law gives the owner of a valid copyright "the exclusive right to . . . reproduce the copyrighted work . . . ."  17 U.S.C. § 106.  To state a claim for copyright infringement, Schroeder must allege: (1) "he owns a valid copyright" in the subject photographs; and (2) Defendant "copied protected aspects of the work."  Skidmore as Tr. for Randy Craig Wolfe Trust v. Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020).  "The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"  Id. (citation omitted).

In the SAC, Plaintiffs allege Schroeder created the subject photographs, which are original works, and received a certificate of copyright registration for the photographs dated May 25, 2020.  (SAC ¶ 42.)  Defendant copied Schroeder's photographs and used them in advertising materials without Schroeder's permission, license, or consent.  (Id. ¶¶ 43-45.)  Based on these allegations, Plaintiffs state a claim for copyright infringement.

### B. Preemption of Sumida's Claims

Defendant argues each of Sumida's claims is preempted by the Copyright Act.  (See Mot. at 14-18.)  Plaintiffs disagree.  (See Opp'n at 13-19.)

The Copyright Act's preemption provision states, in relevant part:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  The Ninth Circuit has "adopted a two-part test, in accordance with section 301 [of the Copyright Act], to determine whether a state law claim is preempted by the Act."  Maloney v. T3Media, Inc., 853 F.3d 1004, 1010 (9th Cir. 2017) (internal citations and quotation marks omitted).  First, courts "decide whether the subject matter of the state law claim

falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming it does, [courts] determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." Id. (internal citations and quotation marks omitted).

The Court first considers the SAC's second claim for violation of the Lanham Act and whether it is preempted by the Copyright Act. Here, the crux of Plaintiffs' Lanham Act claim is that by allegedly appropriating and using the subject photographs in its marketing efforts, Defendant has deceived consumers regarding its association with Sumida. (See SAC ¶¶ 49-58.) In other words, Plaintiffs allege Defendant has created a false impression that Sumida has endorsed Defendant and is "passing off" a relationship with Sumida. (Id.; Opp'n at 18-19.) Based on these allegations, the Court concludes Plaintiffs' Lanham Act claim does not fall "within the subject matter of copyright described in 17 U.S.C. §§ 102 and 103." Maloney, 853 F.3d at 1010.

In Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), the Supreme Court held a Lanham Act claim for "reverse passing off" was preempted by the Copyright Act. See Dastar Corp., 539 U.S. at 38; see also OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., 897 F.3d 1008, 1012 (9th Cir. 2018). The "reverse passing off" principle applies when a producer of a good contends they should have received credit as the source of the good but did not receive that credit. See Dastar Corp., 539 U.S. at 27, 31. The Dastar decision does not apply to "passing off" cases like this one. See Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1216 (E.D. Cal. 2004) ("traditional palming off is not preempted by the Copyright Act"); Henley v. Devore, No. SACV 09-0481-JVS, 2009 WL 10697982, at *15 (C.D. Cal. July 8, 2009) (concluding the plaintiffs' Lanham Act claim was not preempted by the Copyright Act because they "allege a false association or endorsement claim, in which they contend that they received credit, at least implicitly, where they should not have."); Cimperman v. Van Group, Inc., No. EDCV 07-736-VAP (OPx), slip op. at 8 (C.D. Cal. Aug. 15, 2007) ("The Dastar decision applies to "reverse palming off," and does not apply in a case like the present one, alleging only "palming off."). Accordingly, because the claim does not fall within the subject matter of copyright and because it concerns "passing off" a false association, Plaintiffs' Lanham Act claim is not preempted by the Copyright Act. Id.; see also Maloney, 853 F.3d at 1010.

The third and fourth claims alleged in the SAC for unfair competition under California law are derivative of Plaintiffs' Lanham Act claim. (See SAC; Opp'n at 19, n.12 (explaining Sumida's unfair competition claims "are in fact derivative of her Lanham Act passing off claim").) These claims are not preempted by the Copyright Act for the same reason as the Lanham Act claim. See, e.g., Batra v. PopSugar, Inc., No. 18-cv-03752-HSG, 2019 WL 482492, at *5 (N.D. Cal. Feb. 7, 2019) ("to the extent Plaintiffs' UCL claim relies upon Plaintiffs' non-preempted state law claims, the UCL claim is also not preempted."); Silicon Image, Inc. v. Analogix Semiconductor, Inc., No. C-0709635 JCS, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007) ("to the extent the UCL claim is based on tortious interference with contract, the claim is not preempted by the Copyright Act.").

Regarding the fifth and sixth claims for relief brought by Sumida in the SAC, the Court finds the Ninth Circuit's decision in Maloney dispositive of Defendant's argument. In Maloney,

the Ninth Circuit held that a "publicity-right claim is not preempted [by the Copyright Act] when it targets non-consensual use of one's name or likeness on merchandise or in advertising." Maloney, 853 F.3d at 1011 (emphasis in original). The SAC alleges Defendant used the subject photographs that included Sumida's likeness without permission and in a marketing campaign. (See SAC ¶¶ 70-80.) Moreover, the Copyright Act protects "original works of authorship" fixed in any tangible medium of expression. 17 U.S.C. § 102. Here, "it is not the publication of the photograph[s] . . . , as a creative work of authorship, that is the basis for [right of publicity] claims, but rather, it is the use of the [Sumida's] likenesses . . . ." Downing v. Abercrombie & Fitch, 265 F.3d 994, 1003-04 (9th Cir. 2001). In other words, the subject matter of Sumida's fifth and sixth claims is the unauthorized use of her likeness, which is not a "work of authorship" under the Copyright Act. As such, Sumida's right of publicity claims do not fall within the subject matter of the Copyright Act. See Lightbourne v. Printroom, Inc., No. SACV 13-876-JLS (RNBx), 2014 WL 12597108, at *7 (C.D. Cal. Sept. 8, 2014) (finding the plaintiff's statutory and common law right to privacy claims were not preempted by the Copyright Act).

Defendant's reliance on the California Court of Appeal's decision in Fleet v. CBS, Inc., 50 Cal. App. 4th 1911 (1996) and the Ninth Circuit's decision in Jules Jordan Video, Inc. v. 144942 Canada, Inc., 617 F.3d 1146 (9th Cir. 2010) is misplaced.

In Fleet, the producers of a film did not fully compensate the actors who performed and sold the copyright in the film to a third party. Fleet, 50 Cal. App. 4th at 1915. The actors brought an action pursuant to California Civil Code § 3344 against the third party. Although the actors conceded that the third party owned the copyright, they argued that their images were used without their consent. Id. at 1915-16. The Superior Court granted summary judgment in favor of the defendant and the Court of Appeal affirmed. Id. at 1925. It explained, "once appellants' performances were put on film, they became 'dramatic work[s]' 'fixed in [a] tangible medium of expression' that could be 'perceived, reproduced, or otherwise communicated' through 'the aid of a machine or device . . . .' At that point, the performances came within the scope or subject matter of copyright law protection." Id. at 1919-20 (internal citations omitted).

In Jules Jordan Video, Inc., an adult film performer sued a video company for distributing counterfeit copies of DVDs containing films he produced and directed, in which he performed, and to which he owned the copyrights. Jules Jordan Video, Inc., 617 F.3d at 1150. At trial, the performer prevailed on claims including misappropriation of publicity under California Civil Code § 3344. Id. at 1152. On appeal, the Ninth Circuit held the performer's § 3344 claims were preempted and rejected his argument that the defendants' distribution of the films "misappropriated his name and 'persona,' in addition to his 'dramatic performance.'" Id. at 1152. The decision noted that "throughout the litigation," including in the Complaint, "[the performer] has claimed that the factual basis of his right to publicity claim was the unauthorized reproduction of his performance on the DVDs." Id. at 1153-54. As "the entirety of the allegedly misappropriated performance [was] contained within a copyrighted medium," the Ninth Circuit concluded the § 3344 claims concerned the subject matter of copyright. Id. at 1153 (citing Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1141 (9th Cir. 2006)).

Both Fleet and Jules Jordan held the plaintiff's state law privacy and misappropriation claims were preempted by federal copyright law based, at least in part, on the determination that

the subject matter asserted by the plaintiff was within the ambit of copyright. They are both distinguishable here, however, because they both concerned a dramatic performance, which is a "work of authorship" pursuant to 17 U.S.C. § 102. Plaintiffs' fifth and sixth claims for relief concern Sumida's rights in her likeness. "A person's likeness 'is not a work of authorship within the meaning of 17 U.S.C. § 102,' even if it is 'embodied in a copyrightable photograph.'" Coyle v. O'Rourke, No. LA CV 14-07121 JAK (FFMx), 2015 WL 58700, at *10 (C.D. Cal. Jan. 5, 2015) (quoting Downing, 265 F.3d at 1004). Accordingly, the fifth claim for violation of California Civil Code § 3344 and sixth claim for misappropriation of likeness under California common law are not preempted by the Copyright Act. See Maloney, 853 F.3d at 1011.

### C. Claim 2: Violation of the Lanham Act[2]

In the Motion, Defendant argues, to the extent Sumida's Lanham Act is not preempted by the Copyright Act, it fails because Defendant did not suggest Sumida endorsed Volvo's cars and the SAC does not allege Defendant explicitly asserted Sumida's endorsement or use of her name. (See Mot. at 18-20.) In Opposition, Plaintiffs argue they alleged likelihood of confusion sufficiently and, in any event, this matter should not be resolved at the pleading stage. (See Opp'n at 20-22.)

The Lanham Act reads, in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Under § 1125(a)(1)(A), the Ninth Circuit has held that the unauthorized use of a celebrity's persona, image or likeness, may be brought as a false endorsement claim." Upper Deck Co. v. Panini Am., Inc., No. 20-cv-185-GPC (KSC), 2020 WL 3498175, at *3 (S.D. Cal. June 29, 2020) (collecting cases). The Lanham Act "prohibits only false endorsement, not mere use of an image or name." Cairns v. Franklin Mint Co., 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). Not all uses of a celebrity's image are actionable, only

---

[2] The Court notes Defendant does not move separately to dismiss Plaintiffs' unfair competition claims. Defendant, instead, argues the unfair competition claims should fail because the Lanham Act claim fails. (See Mot. at 20, fn. 25.) As the Court concludes Plaintiffs' Lanham Act claim is well-pled, the Court rejects this argument and does not address Plaintiffs' unfair competition claims further.

those that suggest sponsorship or approval are prohibited.  Id.  "Under the law of false endorsement, likelihood of customer confusion is the determinative issue."  Cairns v. Franklin Mint Co., 292 F.3d 1139, 1149 (9th Cir. 2002) (citation omitted).  "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused" as to the sponsorship or approval of the goods bearing the marks at issue in the case."  Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1209 (9th Cir. 2012).

The Ninth Circuit applies an eight-factor test to determine whether there has been a likelihood of consumer confusion in celebrity cases.  See Downing, 265 F.3d at 1007-08 (including the following factors: (1) the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines).  "Although these are all factors that are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case."  Id. at 1008. The Ninth Circuit has also noted that the "Lanham Act's likelihood of confusion standard is predominantly factual in nature."  Wendt v. Host Int'l, Inc., 125 F.3d 806, 812 (9th Cir. 1997).

Here, Plaintiffs allege Sumida's likeness, goodwill, and reputation are known globally and Defendant's use of Schroeder's photographs containing her image "create[d] the false and deceptive commercial impression that [Defendant] and its products are associated with and/or endorsed by Sumida," thus creating consumer confusion.  (SAC ¶¶ 49-52.)  The Court construes the SAC as alleging Sumida's widespread level of recognition in society, Defendant used Sumida's celebrity to help sell its products and services, Defendant used Sumida's actual likeness, Defendant used Sumida's likeness in specific marketing channels on Instagram and Pinterest, and by doing so Defendant has caused consumer confusion.  These allegations satisfy a majority of the relevant factors set forth in Downing, 265 F.3d at 1008.  Accepting the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes Plaintiffs' allegations are sufficient to show likelihood of consumer confusion and thereby state a claim for violation of the Lanham Act.  See Upper Deck Co., 2020 WL 3498175 at *5 (finding the plaintiff stated a claim for violation of the Lanham Act because the plaintiff had alleged sufficient facts to show likelihood of consumer confusion based on the Downing factors).

> D. Claim 5: Violation of California Civil Code § 3344 and
> Claim 6: Misappropriation of Likeness under California Common Law

In the Motion, Defendant argues Plaintiffs' fifth and sixth claims fail because Sumida gave consent to use of her likeness by authorizing Schroeder and Porch House to post her image on social media websites, her likeness cannot be identified in many of the photographs, and her likeness was incidental. (Mot. at 20-22.)  In Reply, Defendant adds the argument that these claims fail because it did not have knowledge of Sumida's lack of consent.  (Reply at 10.)

In Opposition, Plaintiffs argue these claims are well-pled, Sumida posing with a Volvo vehicle did not constitute her consent to use those photographs in Defendant's advertising campaign, and Sumida's image is readily identifiable and not incidental.  (Opp'n at 22-24.)

>California Civil Code § 3344(a) provides:
>
>Any person who knowingly uses another's . . . photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a). The statute defines the term "photograph" as "any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable." Cal. Civ. Code § 3344(b). "A person shall be deemed to be readily identifiable from a photograph when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use." Cal. Civ. Code § 3344(b)(1). The statute also provides for statutory damages in the alternative to proving actual damages, and for an award of attorney fees to a prevailing party. Id.

To state a claim for violation of Cal. Civ. Code § 3344, a plaintiff must plead: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; (4) resulting injury; (5) that the defendant's use was knowing; and (6) a direct connection between the alleged use and the commercial purpose. Cross v. Facebook, Inc., 14 Cal. App. 5th 190, 208 (2017).

In the SAC, Plaintiffs allege "Defendant knowingly used Sumida's likeness for commercial purposes without authorization," "directly for the purpose of advertising or selling" its product, damaging Sumida, and "acted willfully, maliciously, and oppressively, and with full knowledge of the adverse effects of their actions on Sumida." (SAC ¶¶ 70-80.) On the face of the SAC, Plaintiffs allege each element of a California Civil Code § 3344 claim as well as a common law misappropriation of likeness claim.

As stated supra, Defendant argues these claims must fail because Sumida consented to the use of her likeness through authorizing Schroeder and Porch House to post the subject photographs on their public social media sites. In support of this argument, Defendant cites Jones v. Corbis Corp., 815 F. Supp. 2d 1108 (C.D. Cal. 2011). In Jones, a celebrity plaintiff argued she did not consent to the defendant website's use of images of her obtained from photographers at red carpet events. Jones v. Corbis Corp., 815 F. Supp. 2d at 1109. The court rejected the plaintiff's argument and found:

>[N]ot only did Plaintiff understand that her red carpet photographs would be displayed to potential customers to solicit sales . . . but the undisputed record shows it would be contrary to well-established industry practices for a celebrity to consent to the sale and

>distribution of her photographs but not consent to the display of the photographs to potential customers to facilitate sales.

Id. at 1114. The present case differs significantly from Jones. Preliminarily, Jones was a decision issued on summary judgment with a fully developed factual record. Id. at 1109. The present case does not have an undisputed factual record; there is only the SAC, the factual allegations of which the Court must accept as true in deciding the instant Motion. The SAC does not contain any allegations about "industry practice" nor can the Court draw an inference pursuant to Rule 12(b)(6) that Sumida gave express or implied consent to Defendant to use her likeness. The SAC contains no allegations to show Sumida gave her express or implied consent to Schroeder and Porch House to post the subject photographs containing her likeness on their public social media accounts, let alone any allegations that Sumida impliedly gave her consent to Defendant to use her likeness during its advertising campaign on Instagram and Pinterest. Accordingly, the SAC does not allege or demonstrate Sumida's consent to the use of her likeness by Defendant. See Lightbourne v. Printroom, Inc., 2014 WL 12597108 at *6.

As to Defendant's argument that Sumida is not "readily identifiable" in the subject photographs, the Court agrees that Sumida's entire face and body are not portrayed in each of the subject photographs. Overall, however, and as allegedly displayed on Defendant's social media accounts, several photographs depict Sumida's face clearly, as well as her body, and even in the photographs where she is not facing the camera or is in silhouette, she is wearing the same distinctive clothing and hairstyle as in the photographs that show her more clearly. Accordingly, the Court cannot determine Sumida is not readily identifiable in the subject photographs as a matter of law. See Newcombe v. Adolf Coors Co., 157 F.3d 686, 692 (9th Cir. 1998); Wendt v. Host Int'l, Inc., 125 F.3d 806, 810 (9th Cir. 1997); Guettler v. Hyper Bicycles, Inc., CV 19-07839 DSF (ASx), 2020 WL 3213760, at *2 (C.D. Cal. Mar. 31, 2020).

Next, the Court addresses Defendant's argument that Sumida's presence in the subject photographs was "incidental." Incidental use is a defense for right of publicity and commercial misappropriation claims. Davis v. Elec. Arts Inc., 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("Although California courts have not yet held that the incidental use defense applies to right-of-publicity claims, the defense is widely recognized."); see Aligo v. Time-Life Books, Inc., No. C 94-20707 JW, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994). "The rationale underlying this doctrine is that an incidental use has no commercial value and allowing recovery to anyone briefly depicted or referred to would unduly burden expressive activity." Pooley v. Nat. Hole-In-One Ass'n, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000); see also Yeager, 673 F. Supp. 2d at 1100. Court have considered factors of: "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication." Davis, 775 F.3d at 1180 (citing Aligo, 1994 WL 715605 at *3 (internal citations omitted)).

Plaintiffs allege Defendant intentionally and knowingly used Sumida's likeness for commercial purpose, without authorization, and directly for the purpose of selling goods or services. (See SAC ¶¶ 70-80.) Accepting these allegations as true and drawing all reasonable

inferences in favor of Plaintiffs, the Court construes the SAC as alleging Defendant's unauthorized use of Sumida's likeness and Sumida's presence in the subject photographs was not incidental.  Accordingly, the Court cannot determine as a matter of law that Defendant's use of Sumida's likeness or Sumida's presence in the subject photographs was merely incidental.  See, e.g., Upper Deck Co., 2020 WL 3498175 at *15.

### E. Request for Attorneys' Fees and Punitive Damages

Defendant moves to dismiss Sumida's request for attorneys' fees and punitive damages. (See Mot. at 23-24.)  The basis for the attorneys' fees request in the SAC is the fifth claim for violation of California Civil Code § 3344.  As alleged in the SAC, the basis for the punitive damages request is the second, third, fifth, and sixth claims.  Defendant moves for these remedies to be dismissed because, according to Defendant, each of Plaintiffs' claims fails as a matter of law.  Contrary to Defendant's argument, the Court has found each of these claims well-pled.  While the Court agrees with Defendant that Plaintiffs cannot recover punitive damages for a violation of California Business and Professions Code § 17200, see Ozeran v. Jacobs, 798 F. App'x 120, 122 (9th Cir. 2020) ("The only remedies available to a private plaintiff under California's UCL are the equitable remedies of injunction and restitution."), Plaintiffs' second, fifth, and sixth claims provide a sufficient basis for the request for punitive damages. Accordingly, the Court declines to dismiss Plaintiffs' request for attorneys' fees and punitive damages.

## VI. Conclusion

For the foregoing reasons, the Court DENIES the Motion to Dismiss Plaintiffs' Second Amended Complaint.

**Defendant shall file its Answer to the SAC by no later than September 30, 2020.**

**IT IS SO ORDERED.**